MERLE P. PARK, APPELLEE, V. SCHOOL DISTRICT NO. 27,
RICHARDSON COUNTY, APPELLANT.

FILED NOVEMBER 9, 1934.  No. 29266.

*Wiltse & Wiltse* and *John C. Mullen,* for appellant.

*Jean B. Cain, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

EBERLY, J.

This is a proceeding for relief under the provisions of our workmen's compensation act. From an award in favor of the applicant in the sum of $10.96 each week after April 13, 1932, and sums aggregating $3,258.95 as and for necessary medical, hospital and surgical expenses incurred, the defendant school district appeals.

At the time of the accident which constitutes the basis of this litigation, Miss Park, the applicant, was the teacher of school district No. 27 of Richardson county. She was regularly employed as such for a term of nine months commencing September 1, 1931. On April 13, 1932, during the noon hour, she was engaged in the construction of a "bird bath" on the schoolhouse grounds. This as planned, when completed, would have consisted of a post set in the ground, on top of which was secured a pan filled with water. A post had been furnished by one of the patrons of the school for this purpose, and an old pan was obtained from another. To make the pan "water tight," Miss Park was, at the time of the accident, engaged in melting some paraffin in the school furnace, intending to use it in covering the bottom of the old pan. In attempting to remove the melted paraffin from the furnace, her clothing caught fire and she was badly burned. She received "third-degree burns" on both thighs extending from her body to below the knees. She was promptly removed to her home and medical assistance was obtained. It may be said that thereafter she was continuously confined to her bed, and at the time of the trial in the district court

she was brought to the courtroom upon a cot. It appears that she was treated for her injuries at her parents' home in Rulo, Nebraska, from April 13, 1932, to July 17, 1932. She was then removed to the Missouri Methodist Hospital, where the treatment was continued until October 27, 1932, at which time she was taken to the University Hospital at Omaha, where she remained under treatment until June 5, 1933. While at this institution her left leg was amputated near the hip on April 1, 1933. On June 5, 1933, she was taken from the University Hospital in Omaha to her home at Rulo, Nebraska, where, up to the date of the trial in the district court, on March 16, 1934, medical treatment of her injuries was still being continued.

As to the nature and cause of her physical injuries there is no question that she has been confined to her bed since April 13, 1932, as the result of what all the medical witnesses agree are third-degree burns suffered by her on such date. These burns were also the direct cause of the amputation of the leg on April 1, 1933. Her physicians testify that the effects of these burns were and are latent and progressive, and at the time of the trial in the district court such physicians were unable to foresee what the ultimate results of plaintiff's injuries might be.

On this subject a reputable authority says: "The character of lesions caused by burns is determined by the intensity of the heat. Clinically, the sequelæ may be classified as first-, second-, or third-degree burns. A first-degree burn is a simple erythema, a second-degree burn causes blistering, while a third-degree burn causes necrosis and sloughing of the superficial tissues and necrotic inflammation or ulceration of the deeper tissues. Burns are often described as heat wounds and are frequently complicated by infection." Kessler, Accidental Injuries, p. 57.

In this court the correctness of the determination of the trial court is challenged for the following reasons: The alleged insufficiency of the evidence; that the accident did not arise out of or in the course of her employment; that she failed to make claim for compensation against the de-

fendant school district within six months from April 13, 1932, and did not establish sufficient cause for such failure; and that she failed to file her petition before the compensation commissioner within one year after the date of her injury, or establish by her evidence a reason for not so doing.

The legal effect, under the circumstances involved in this case, of failure to make claim within six months and to file petition within one year obviates the necessity of determining the other contentions of appellant.

The following provisions of our compensation law are applicable to the issues thus presented:

Section 48-133, Comp. St. 1929, provides: "No proceedings for compensation for an injury under this article shall be maintained, unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof; and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same, * * * or in event of his physical or mental incapacity, within six months after * * * removal of such physical or mental incapacity."

Section 48-138 provides: "In case of personal injury, all claim for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in section 3680 (48-139) hereof. * * * Where, however, payments of compensation have been made in any case, said limitation shall not take effect until the expiration of one year from the time of the making of the last payment. In the event of legal disability of an injured employee, said limitation shall not take effect until the expiration of one year from the time of removal of such legal disability."

Section 48-152 provides: "Throughout this act, the following words and phrases as used therein shall be considered to have the following meaning, respectively, unless

the context shall clearly indicate a different meaning in the construction used: * * * (b) The word 'accident' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The said terms shall in no case be construed to include occupational disease in any form, or any contagious or infectious disease contracted during the course of employment, or death due to natural causes, but occurring while the workman is at work."

Section 48-142 provides: "The amount of any agreement or award payable periodically for more than six months may be modified as follows: (a) At any time by agreement of the parties with the approval of the compensation commissioner. (b) If the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury. * * * In such case, the same procedure shall be followed as in section 3680 (48-139) in case of disputed claim for compensation, except that after the district court has entered order, award or judgment in the case then the application shall be made to that court."

Section 48-132 provides: "If an injured employee is mentally incompetent or is a minor at the time when any right or privilege accrues to him under this article, his guardian or next friend may, in his behalf, claim and exercise such right or privilege."

Section 48-157 provides, as to claims for benefits under the provisions of our compensation act (Comp. St. 1929, secs. 48-101 to 48-161): "Any party at interest may present a claim in person or by an attorney."

This jurisdiction is committed to the view that the workmen's compensation act is "one of general interest,

not only to the workman and his employer, but as well to the state, and it should be so construed that technical refinements of interpretation will not be permitted to defeat it." *Parson v. Murphy*, 101 Neb. 542.

While, as applied to the questions presented by this record, the statutory provisions above quoted are to be liberally construed, yet we must approach the questions so presented, "having full regard for the fact that, under the division of powers found in the Constitution, our duty is not to enact but to expound the law, not to legislate but to construe legislation; to apply the law as we find it, to maintain its integrity as it has been written by a coordinate branch of the state government. If the law as written works hardships in a special class of cases the remedy lies with the branch of the government charged with the duty of enacting laws. If one does not protect himself and his rights under the law as written it is his misfortune, and this court should not, by judicial legislation, for the purpose of relieving that misfortune, write into the statute a provision that the legislature has not seen fit to enact. During the course of an opinion worthy of careful perusal and consideration, it was said by Mr. Justice Marshall, speaking for the supreme court of Wisconsin, in *City of Milwaukee v. Miller*, 154 Wis. 652, a case involving the workmen's compensation law of that state: 'That is his misfortune and, however much it may be regretted, it is far better that the integrity of the law be not invaded than that it be impaired in the slightest degree in the particular instance to avoid the consequence of his not knowing or appreciating its requirements.'" *Cooke v. Holland Furnace Co.*, 200 Mich. 192.

There is an agreement in the evidence offered at the trial as to facts which support the conclusion that the third-degree burns inflicted on the body of Miss Park on April 13, 1932, are strictly embraced within the statutory description of an "accident," as hereinbefore set out, viz.: "An unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing

at the time objective symptoms of an injury." Therefore, the accident must be deemed to have occurred on the date mentioned. It must also be admitted that on that day "violence to the physical structure of the body" occurred, and that "objective symptoms of an injury" were immediately produced, though the theory of the claimant is that those injuries then sustained were at least in part latent, and at the time of the trial in the district court had developed and brought about plaintiff's then deplorable condition. It is also to be observed that the statutory definition quoted embraced not only present "violence to the physical structure of the body," but also "such disease or infection as naturally results therefrom." It is also true that it appears without dispute that continuously from and after April 13, 1932, plaintiff was at least subject to a total temporary disability. She was continuously confined to her bed and her ability to pursue her profession or perform labor was wholly destroyed. While the evidence of the doctors is that as to final results the injuries were latent and progressive, and that the final effects thereof, so far as permanent disability is concerned, could not be foretold, it in no manner tends to disprove the fact of the existence of at least temporary total disability from and after the accident.

This, under our statute, was a compensable injury, for which, after it had continued for six weeks, compensation was to be computed from the date of injury. Comp. St. 1929, sec. 48-119.

Our law also contemplates that these facts constituted a present cause of action, and a prompt award of compensation therefor, if made, would have been without prejudice to subsequent developments as to the final results of the injuries sustained. Comp. St. 1929, sec. 48-142.

The statutory provisions heretofore quoted contain three requirements which are imposed upon the claimant here, viz.: (1) A notice of injury to be given the employer as soon as practicable after the happening thereof; (2) a claim for compensation with respect to such injury to be

made within six months after the occurrence of the same; and (3) a petition to be filed within one year as provided by section 48-138, Comp. St. 1929. However, only the last two requirements above noted are vital in the instant case.

It seems that these requirements are not to be deemed as mere statutes of limitation, but rather as conditions precedent to a right of action. *McRae v. New York, N. H. & H. R. Co.,* 199 Mass. 418; *Morrison v. Baltimore & O. R. Co.,* 40 App. D. C. 391; *Partee v. St. Louis & S. F. R. Co.,* 204 Fed. 970.

In *Duhrkopf v. Bennett,* 108 Neb. 142, the rule is announced in the following language: "Where a right has been created by statute which did not exist at the common law, the legislature may impose restrictions thereon, and the conditions so imposed qualify and are an integral part of the act and must be fully complied with in the manner therein prescribed." See, also, *Samland v. Ford Motor Co.,* 123 Neb. 819.

Again, in *Welton v. Swift & Co.,* 125 Neb. 455, the rule is thus announced: "No proceedings for compensation can be successfully maintained if no claim was made therefor within six months, or petition filed therefor within one year, of the death of the employee."

Appellee seeks to excuse her failure to comply with the statutory requirements on the grounds, viz.: (1) That "plaintiff was not in a physical condition to file her claim or petition prior to about the time such petition was filed;" and (2) that, "because of the fact that plaintiff's injuries, when sustained, were latent and progressive, plaintiff was not required under the workmen's compensation law to file her claim within six months of the date of the accident and to file her petition within one year thereafter."

Under the facts in the record before us, neither of these contentions can be sustained. There is no evidence that plaintiff's mind was affected in any degree, or that her ability to communicate was impaired. The express wording of the statute is: "Any party at interest may present a claim in person or by an attorney." A portion of the

time after her injury was spent in her mother's home, where her friends were calling upon her. There is no evidence that at any time her situation was such as would prevent the transmission of messages or information, unless it may be inferred that such was the case immediately following the amputation of her limb, which occurred some eleven months after the date of the accident and the commencement of total disability.

To sustain the proposition of the latent character of her injuries plaintiff relies on the following cases: *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1; *Stone v. Thomson Co.*, 124 Neb. 181; *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347; *Travelers Ins. Co. v. Ohler*, 119 Neb. 121; *Astuto v. V. Ray Gould Co.*, 123 Neb. 138; *Collins v. Casualty Reciprocal Exchange*, 123 Neb. 227; *Marler v. Grainger Bros.*, 123 Neb. 517; *Poast v. Omaha Merchants Express & Transfer Co.*, 107 Neb. 516.

But in the examination of these authorities, to determine their application to the instant case, the controlling fact is that the injuries Miss Park suffered on April 13, 1932, immediately culminated in total disability which has continued without interruption down to the present time. These injuries were in their nature indisputably compensable from the date of their inception, if compensable at all.

The rule relied upon by plaintiff is thus stated in *Travelers Ins. Co. v. Ohler*, 119 Neb. 121: "An employee, sustaining an accidental injury arising out of and in the course of his employment, will not be denied compensation for failure to give notice of claim within six months or to commence his action within one year from the date of the accident, when it appears from the evidence that the injury was latent and did not result in compensable disability until after the expiration of the time for giving notice of claim and commencing action, provided notice is given and action commenced within the statutory period after the employee has knowledge that the accident has caused a compensable disability." This rule is in harmony

with the later decisions of this court. See *Astuto v. V. Ray Gould Co.*, 123 Neb. 138; *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1; *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347. The other cases cited by plaintiff in no manner conflict with the above principle.

In the event of failure to comply with the formal statutory requirements, the substance of the rule, with reference to a claim for compensation as distinguished from a notice of injury, is that recovery of compensation may be permitted only "if employee's accidental injury is latent and progressive and cannot with reasonable certainty be recognized at first as compensable, where notice is given (of claim for compensation) within six months from the time the employee acquires knowledge of a compensable disability as a result of the accident." *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1. As applied to the facts in the instant case, this rule may not be invoked to sustain a recovery. Here, a compensable injury existed, if at all, from and after April 13, 1932, in the form of total disability. Plaintiff knew her condition from day to day, and knew that she had a present total disability. She failed to make claim for compensation as required by section 48-133, Comp. St. 1929, and filed no petition as required by section 48-138. Therefore, by the express terms of the rule set forth above she is barred, and the district court erred in the award of compensation made.

The judgment of the district court is, therefore, reversed and the cause dismissed.

REVERSED AND DISMISSED.