GRACE M. HAUFF, APPELLEE, V. KATHERINE KIMBALL, EXECUTRIX OF THE ESTATE OF A. C. KIMBALL, DECEASED, APPELLANT.

77 N. W. 2d 683

Filed June 29, 1956. No. 34054.

*Doyle, Morrison & Doyle,* for appellant.

*Neely, Otis & Neely,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Walter R. Hauff, referred to herein as the deceased, was a granite cutter. He was employed by A. C. Kimball, who used the name of Kimball Monument Company in the conduct of his business at McCook and who is referred to herein as Kimball, from December 1923 until he was disabled in July of 1954. He substantially managed and performed the work required not including sales and promotion. He employed others to assist him infrequently and at irregular intervals. His work of converting stones into monuments was done in a room about 16 feet wide and 50 feet long. In this was a workshop and a sandblast room. The latter was in the northeast part of the workshop, was about 8 feet by 10 feet, and about 8 feet high. It had an exhaust fan in the ceiling estimated to have been not more than 50 percent efficient. There was a door in the ceiling through which were admitted the stones when work was to be done on them. In one part the stones were put on bankers and in the other the sandblast machine was located. An opening in the latter was covered with fine screen through which the operator observed the work. The operator was required to wear goggles to prevent sand and dust from entering his eyes. The stone was prepared for marking in the outer workshop, the lettering

was there marked on the stone, and a coat of glue was put on the parts of the stone that were to be protected from the abrasive action of the sandblast.

The stone was then taken to the sandblast room where the lettering was done by placing silica sand under great pressure against the stone by the operation of the sandblast machine. When this operation was completed the finishing work was done, especially on raised-letter monuments, in the workshop area. This was accomplished with an air hammer and chisel. This caused a large amount of dust to be released in the air. The chisel did not chip off the stone but it did create stone dust. The sandblast operation made a great amount of dust. The stone would be covered with from one-quarter to one-half an inch of white flour-like dust from the sand and the operator would be saturated and covered with it. The sand was used more than once but it was required to be screened each week to separate the dust from the abrasive. The dust from the silica sand constantly saturated the air in the building and each part of it. The deceased usually conducted these operations and when he finished he looked as though he had been showered all over with flour. The time required to complete the sandblasting and do the finishing work on a stone was from one-half hour to 5 hours, depending upon the size of the stone and the amount and character of the lettering thereon. The sandblast room had three-fourths inch matched pine lumber on the inside of it and the inner surface of the lumber was covered with rubber. The deceased actively worked as a granite cutter from 1915 until he became disabled in July 1954. The last 31 years of this period he was engaged by Kimball at McCook. His wages were $75 per week. Appellee is his dependent.

The deceased performed the duties of his employment to July 3, 1954. He had suffered some discomforture from arthritis and it was observed in the spring of 1954 that his breathing was not normal when he was lying

down or exerted himself. This became more pronounced thereafter. The record does not advise that he had at any time during his engagement at McCook been detained from his labors by illness before July 3, 1954. He then became disabled, he was thereafter wholly incapacitated to perform labor, and he was after about August 1, 1954, hospitalized until his death November 3, 1954. His normal weight was about 168 pounds. In the spring of 1954 it had decreased to about 148 pounds and in August of that year it was 113 pounds.

Appellee instituted and prosecutes this cause to recover benefits awarded by the Nebraska Workmen's Compensation Act for disability suffered by the deceased from July 12, 1954, to and including November 3, 1954, and dependency benefits subsequent to the death of the deceased, the husband of appellee. The district court found for appellee and awarded her judgment against Katherine Kimball as executrix of the estate of A. C. Kimball who was substituted by revivor as defendant in the cause because of the death of the original defendant, for $28 per week from July 12, 1954, to and including November 3, 1954, a period of 16 3/7 weeks, as temporary total disability benefits, and thereafter and in addition thereto $28 per week for a period of 308 4/7 weeks as dependency benefits due to the death of the deceased resulting from a compensable disease, hospital and medical expenses paid by appellee in the sum of $335.50, and burial benefits in the sum of $300.

The thesis of appellant is that the evidence does not establish that deceased was afflicted with an occupational disease; that if he was it did not arise out of or in the course of his employment by Kimball but while he was employed by others; that the Nebraska Workmen's Compensation Act does not provide benefits for death caused by occupational disease; and that disability from occupational disease is not compensable by the act if the disease was contracted before 1943, the date the act was amended making such disability compensable.

The proof is that the cause of the death of the deceased was what is sometimes termed silicosis but medically known as pneumoconiosis silicosis, an inflammatory disease of the lungs due to silica dust. The record shows without dispute that silicosis is an occupational disease; that the deceased was for more than 30 years while employed by Kimball subjected to conditions favorable to the contraction of the disease, that is, the environment of the employment was atmosphere permeated with silica dust inhaled over a period of time by deceased in the air he breathed; that he first suffered disability about July 3, 1954; and that soon thereafter it was discovered for the first time that he had the disease. The evidence supports the conclusion that the personal injuries to deceased within the meaning of the Nebraska Workmen's Compensation Act were caused by a compensable disease arising out of and in the course of his employment by Kimball. Associated Indemnity Corp. v. Industrial Accident Commission, 124 Cal. App. 378, 12 P. 2d 1075.

The Nebraska Workmen's Compensation Act was amended in 1943 to include within its scope and operation personal injury caused an employee by occupational disease. Laws 1943, c. 113, § 1, p. 397. Since the effective date of the amendment personal injury caused to an employee by occupational disease arising out of and in the course of his employment entitled the employee to compensation therefor from his employer as designated in the act. § 48-101, R. R. S. 1943. The terms "injury" and "personal injuries" are defined by the act as violence to the physical structure of the body and it is provided therein that the terms shall include disablement resulting from occupational disease arising out of and in the course of employment in which the employee was engaged. § 48-151, R. R. S. 1943. An occupational disease is classed not as an accident but as an injury. The act associates occupational disease with accidental injuries and applies the law applicable to one

to the other but it does not prescribe a method by which the time of injury in case of occupational disease may be ascertained. This court has not been required before the appearance of this cause to resolve that precise problem. It has been the subject of decision by other courts.

In Textileather Corp. v. Great American Indemnity Co., 108 N. J. Law 121, 156 A. 840, it was decided: "Under the Workmen's Compensation act, as amended, the time fixed for compensation for disability or death occurring by reason of certain occupational diseases is when incapacity or death occurs, and not when the poison specified makes its first appearance." The opinion contains the following: "It is a well known fact that industrial diseases are gradual in development—the first and early steps are not always perceptible. The rate of progress may vary. * * * Sometimes the disease is quiescent and latent; sometimes the fatal course is swift. Medical science cannot always detect and describe the progress of disease. Employes exposed to occupational diseases frequently work for different employers. It is unthinkable that the legislature should have contemplated that in such instances the recovery of compensation should be defeated. The legislature has properly assumed a benevolent care for workmen. * * * The legislature must have intended that compensation should be determined, subject to procedural limitations, when the disability or death occurred, and at no other time. Otherwise, the whole plan would prove ineffective."

Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 P. 2d 933, 86 A. L. R. 563, discussed the subject in this manner: "An injury may arise out of and in the course of the employment when there is a causal connection between the employment and the injury; but for the purposes of compensation the injury dates from the time when the diseased condition culminates in an incapacity for work, and it is at that time that the employer's liability becomes fixed, for until then the work-

man has received no injury in the legal sense, though the seeds productive of the injury had lodged in his frame long before."

Zurich General Accident & Liability Ins. Co. v. Industrial Commission, 203 Wis. 135, 233 N. W. 772, expresses the conclusion of the court in this language: "Upon a full reconsideration of the entire matter, it is considered that it should be held that the 'time of accident' within the meaning of the statute in occupational disease cases should be the time when disability first occurs; *

The court stated in Associated Indemnity Corp. v. Industrial Accident Commission, *supra:* "Where an occupational disease results from the continual absorption of small quantities of some deleterious substance from the environment of the employment over a considerable period of time, an afflicted employee can be held to be 'injured' only when the accumulated effects of the substance manifest themselves, which is when the employee becomes disabled and entitled to compensation; and the 'date of injury', within the meaning of the Workmen's Compensation Act, is the date when the disability is first incurred, and the six months' period of limitations runs from that date and not from the time the employee has knowledge of the disease." See, also, Annotation, 86 A. L. R. 572.

It has been consistently declared by this court that a latent injury, progressive in character, which results in compensatory disability, occurs within the meaning of the Nebraska Workmen's Compensation Act when the condition produced by the injury culminates. Johansen v. Union Stock Yards Co., 99 Neb. 328, 156 N. W. 511; Travelers Ins. Co. v. Ohler, 119 Neb. 121, 227 N. W. 449; Marler v. Grainger Bros., 123 Neb. 517, 243 N. W. 622; Park v. School District, 127 Neb. 767, 257 N. W. 219; Keenan v. Consumers Public Power Dist., 152 Neb. 54, 40 N. W. 2d 261. See, also, Annotation, 108 A. L. R. 316.

The cause of action for benefits under the Nebraska Workmen's Compensation Act alleged in this cause did not accrue until the injury to the deceased culminated in his disability in July 1954. The time of the amendment of the act enlarging its scope to include occupational diseases is immaterial to this case.

The major premise of appellant in this litigation is that the Nebraska Workmen's Compensation Act does not provide benefits for the death of an employee caused by occupational disease arising out of and in the course of his employment. The Legislature amended the act to afford benefits for injury or death suffered by an employee from occupational disease arising out of and in the course of his employment. This is clear proof of the purpose and intention of the Legislature to provide coverage of the result of such illness suffered by an employee within the provisions of the act and death benefits to his dependents in the event of death from such cause. This is expressed by the court in Textileather Corp. v. Great American Indemnity Co., *supra*: "The legislature in setting up a plan for compensation for occupational diseases intended to provide a complete and workable arrangement for the compensation of those disabled by occupational diseases, and also for suitable provisions for their dependents in the event of death."

The relevant part of section 48-101, R. R. S. 1943, is as follows: "When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his * * * employment, of which the actual or lawful imputed negligence of the employer is the natural and proximate cause, such employee shall receive compensation therefor from his * * * employer if the employee was not willfully negligent at the time of receiving such injury." Section 48-109, R. R. S. 1943, declares: "If both employer and employee become subject to sections 48-109 to 48-147, both shall be bound by the schedule of compensation provided in section 48-121, which compensation shall be paid in every case of injury

or death caused by accident or occupational disease arising out of and in the course of employment, except accidents caused by, or resulting in any degree from the employee's willful negligence as defined in section 48-151." The pertinent portion of subparagraph (4) of section 48-151, R. R. S. 1943, is: "The terms 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms shall include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in said employment, and the disability commenced within two years subsequent to the date of termination of the employment."

The essence of the quoted provisions is a legislative mandate that if injury is caused an employee by accident or occupational disease arising out of and in the course of his employment the employee shall have compensation therefor from his employer unless the injury was caused by willful negligence of the employee; that the employer and the employee are bound by the schedule of compensation contained in the act and such compensation shall be paid for every "injury or death caused by accident or occupational disease" arising out of and in the course of the employment not caused by willful negligence of the employee as defined in the act; and that the terms "injury" and "personal injuries" include disablement received from occupational disease arising out of and in the course of the employment. The operation of the provisions for death benefits is conditioned by the words "If death results from injuries." § 48-122, R. S. Supp., 1955. The terms "injury" and "injuries" include disablement from occupational disease. It follows that if the disablement of an employee from such disease results in his death the employee is covered by the act and his dependent is entitled to death benefits provided therein because the first section of the act says compensation is

payable "When personal injury is caused to an employee by accident or occupational disease." The language of Dobesh v. Associated Asphalt Contractors, 138 Neb. 117, 292 N. W. 59, may be appropriately repeated: "We would hesitate in this situation to allow the loose language of one section to curtail or defeat, by technical construction, the general intent which the legislature has declared as to the entire statute. In all questions under the workmen's compensation law, it is our duty to avoid rules of technical construction as much as possible, and to determine the intention of the legislature from the language of the act as a whole, rather than from the loose words or phrases of isolated paragraphs." The argument that the act does not provide benefits for the death of an employee caused by occupational disease is without merit.

Appellee contends the penalty provision of the act should be applied to and enforced in this case. § 48-125, R. R. S. 1943. There is no indication in the record that the defense raised was not in good faith or that delay in the litigation was caused by appellant. The principal ground of defense urged by appellant raised a question of law of first impression in this jurisdiction. It is not considered that this is an appropriate case for exaction of a penalty.

The judgment of the district court should be and it is affirmed. Appellee should be and is allowed an attorney's fee to be paid by appellant in the sum of $250 to be taxed as costs and all costs of appeal should be and they are taxed to appellant.

AFFIRMED.