KATHRYN ROSS, APPELLANT, V. BALDWIN FILTERS AND
LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS
AND THIRD-PARTY PLAINTIFFS, AND STATE OF NEBRASKA,
SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEES.
557 N.W.2d 368

Filed December 10, 1996.    No. A-96-300.

William J. Ross and Vikki S. Stamm, of Ross, Schroeder & Romatzke, for appellant.

Thomas D. Wulff and Douglas E. Baker, of Welch, Wulff & Childers, for appellees Baldwin Filters and Liberty Mutual Insurance Company.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

Kathryn Ross appeals from a decision of the Nebraska Workers' Compensation Court finding that her claim was barred by the statute of limitations and dismissing her petition.

## STATEMENT OF FACTS

Ross, 53 years old at the time of the hearing, began working at Baldwin Filters on September 20, 1976. Although the date is unclear, it appears that Ross first became aware of a skin problem associated with the paper at Baldwin Filters in November 1976. After informing her supervisor, Ross was moved to the "boxing" area, where she did not experience any further problems until 1986. In 1986, Ross suffered from a condition in which her eyes swelled, her whole body itched, and her elbows broke out in a rash. At this time, Ross consulted Dr. L.R. Smith, who treated her condition with shots and medication. Ross also filed a workers' compensation first report with her employer on November 25, 1986, in which she reported swollen eyes and itching due to the paper.

In 1989, Ross was transferred to the "can" department, where her skin broke out again within 2 weeks. Also in 1989, Ross saw Dr. David Kingsley regarding her skin condition. Dr. Kingsley stated in his 1989 report, "It is very possible this is an airborne

and contact irritant dermatitis." The record indicates that Ross continued to see Dr. Smith during 1993 and 1994, complaining of the rash condition. Dr. Smith's reports described Ross' condition in 1994 as "recurrent allergies, on ears, neck, arms and eyes. Probably secondary to exposure at work." According to a letter from Dr. Smith admitted at trial, Ross was suffering from "contact dermatitis, felt secondary to the cardboard."

Ross testified that her skin problems continued from 1986 through 1994; however, she described her outbreaks in 1994 as more severe, more frequent, and affecting more areas of her body. She also stated that by 1986 or at least by 1990, she had been informed by both Dr. Smith and Dr. Kingsley that her exposure to the paper at Baldwin Filters was causing her skin problems.

On April 22, 1994, Dr. Smith recommended to Ross that she quit her job because of the contact dermatitis. According to Ross, she was informed that her condition would only worsen if she continued to work at Baldwin Filters. Ross returned to work at Baldwin Filters on May 3, but immediately broke out into a rash again. She subsequently quit her job on May 5. She has not experienced any similar problems since this date.

Ross could not recall any time that she had missed work prior to the last year due to her contact dermatitis. Sharon Marzolf, a nurse at Baldwin Filters, testified that to the best of her recollection, Ross missed very little, if any, work as a result of her allergies. Ross testified that while she never submitted any of Dr. Smith's medical bills associated with the contact dermatitis or treatment thereof, Dr. Kingsley was paid by workers' compensation, as was a Dr. Hanich, whom she saw on an unknown date. A claims case manager for Liberty Mutual Insurance Company testified, however, that no medical or indemnity benefits had been paid to Ross as a result of her contact dermatitis and that to the best of her knowledge, no such bills had ever been submitted.

On October 6, 1994, Ross filed a petition alleging that on or about May 5, while employed by Baldwin Filters as a production line worker, she sustained personal injuries. According to Ross, she suffered from contact dermatitis, causing swollen

eyes and a rash all over her arms, neck, ears, and eyes. Baldwin Filters and Liberty Mutual filed their answer on November 4, alleging that any substance complained of was ubiquitous rather than characteristic of Ross' employment. A third party petition was filed on March 31, 1995, against the Nebraska Second Injury Fund, which responded by answer on April 5.

## DECISION OF WORKERS' COMPENSATION COURT TRIAL JUDGE

A hearing was held on July 19, 1995, before the Workers' Compensation Court. While Ross testified on her own behalf, Marzolf and the claims case manager testified on behalf of Baldwin Filters and Liberty Mutual. Following Marzolf's testimony, Baldwin Filters and Liberty Mutual moved to amend their answer to allege the statute of limitations. Ross' objection to the motion because it was out of time was overruled.

By order dated August 10, 1995, Ross' petition was found to be barred by the statute of limitations and was dismissed. The court stated in relevant part:

> It is the plaintiff's position that since she missed little work until she was advised to completely quit her employment in May, 1994, that she had no claim until that time. The Court finds, however, the plaintiff knew as early as 1986 she was suffering from dermatitis which she believed to be caused by exposure to paper at work. Two doctors confirmed that possibility.

The court specifically declined to toll the statute of limitations because Ross was unaware that the dermatitis would eventually require her to leave her employment. Finally, the court stated:

> Even if the Court were to find that the statute of limitations had not expired on the plaintiff's claim, it is doubtful the plaintiff has sustained her burden of showing by a preponderance of the medical evidence the necessary causation to sustain a claim. While no magic words are required, a plaintiff must show with reasonable certainty that the disability of which he or she complains is causally connected to her work. While they state their belief that her condition is most likley [sic] related to her work, nei-

ther the opinion of Dr. Smith . . . [n]or the opinion of Dr. Kingsley . . . [is] stated in sufficiently definite and certain terms to sustain the plaintiff's burden of proof.

## DECISION OF REVIEW PANEL

Ross filed an application for review on August 21, 1995, and a review hearing was held on December 13. By order dated March 1, 1996, the review panel affirmed the trial court's finding that the statute of limitations had run. The review panel also found that the trial court did not abuse its discretion in permitting Baldwin Filters and Liberty Mutual to amend their answer by interlineation to include the statute of limitations defense after Ross had rested. The review panel also stated that had the case not been resolved by the aforementioned, it would have remanded the case for clarification on the finding of causation.

One judge dissented and cited *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995), in support of the conclusion that the statute of limitations had not run in this case. The dissenting judge also opined that the court abused its discretion in allowing Baldwin Filters and Liberty Mutual to amend their answer at the conclusion of Ross' case.

Ross timely appealed to this court. The Second Injury Fund declined to file a brief on appeal.

## ASSIGNMENTS OF ERROR

In sum, Ross asserts on appeal that the court erred in (1) finding that her petition was barred by the statute of limitations, (2) allowing Baldwin Filters and Liberty Mutual to amend their answer at trial to allege the statute of limitations defense, and (3) finding that Ross had failed to sustain her burden of showing that her injury arose out of her employment with Baldwin Filters.

## STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award;

or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Reissue 1993); *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996); *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). In determining whether to affirm, modify, reverse, or set aside the judgment of the review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). However, as in other cases, an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Berggren, supra*; *Shilling v. Moore*, 249 Neb. 704, 545 N.W.2d 442 (1996).

## ANALYSIS

*Statute of Limitations.*

The first issue presented is whether the statute of limitations applicable to workers' compensation actions bars Ross' action. Ross argues that since this is an occupational disease case, the statute of limitations did not begin to run until the date her physician informed her she could no longer work (April 1994) or, alternatively, when she actually ceased working (May 1994). In contrast, Baldwin Filters and Liberty Mutual argue that Ross' cause of action accrued on the date she acquired knowledge of her work-related illness (1986 or at least by 1990).

Neb. Rev. Stat. § 48-137 (Reissue 1993) provides that in cases of personal injury, all claims are barred unless a petition is filed within 2 years of the accident or the last payment of compensation. An accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Neb. Rev. Stat. § 48-151(2) (Reissue 1993). An occupational disease is defined as "a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and shall exclude all ordinary diseases of life to which the general public is exposed." § 48-151(3). Accord, *Berggren, supra*; *Ritter v. Hawkeye-Security Ins. Co.*, 178 Neb. 792, 135 N.W.2d 470 (1965). It is not necessary that the disease originate exclu-

sively from the employment, but only that "the conditions of the employment must result in a hazard which distinguishes it in character from employment generally." *Ritter*, 178 Neb. at 795, 135 N.W.2d at 472.

■ The issue of when the statute of limitations begins to run in occupational disease cases was first decided in *Hauff v. Kimball*, 163 Neb. 55, 77 N.W.2d 683 (1956). In *Hauff*, the employee worked as a granite cutter from 1915 until July 1954. In the spring of 1954, the employee experienced difficulty breathing when he was lying down or exerting himself. With his condition worsening, the employee became unable to work on July 3, 1954, was hospitalized in August 1954, and died in November 1954. The cause of death was silicosis, which the court determined was an occupational disease. The court then held that the employee's cause of action did not accrue until the injury to the employee culminated in his disability in July 1954. In so holding, the court quoted *Associated Indem. Corp. v. Indus. Acc. Com.*, 124 Cal. App. 378, 12 P.2d 1075 (1932):

> "Where an occupational disease results from the continual absorption of small quantities of some deleterious substance from the environment of the employment over a considerable period of time, an afflicted employee can be held to be 'injured' only when the accumulated effects of the substance manifest themselves, which is when the employee becomes disabled and entitled to compensation; and the 'date of injury', within the meaning of the Workmen's Compensation Act, is the date when the disability is first incurred, and the six months' period of limitations runs from that date *and not from the time the employee has knowledge of the disease.*"

(Emphasis supplied.) *Hauff*, 163 Neb. at 61, 77 N.W.2d at 687.

This language was again quoted with the emphasized portion omitted in *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). Similar to the situation in *Hauff*, the date the employee quit working in *Osteen* was nearly simultaneous to the date of diagnosis and resulting death. In *Osteen*, the employee ceased working and entered the hospital on February 1, 1977. Cancer was subsequently discovered, and the employee

died on March 18. It was only after the autopsy that the cause of death, peritoneal mesothelioma, was found to be employment related. The court stated, "The earliest date upon which we could hold that the disease manifested itself in disability was February 1, 1977." *Id.* at 286, 307 N.W.2d at 518.

Both sides contend that *Osteen, supra,* states the applicable rule for occupational diseases. We agree. The issue then becomes, Upon what date did Ross become disabled for the purpose of the *Osteen* rule?

Unlike *Hauff* and *Osteen*, in which the employee experienced a manifestation of symptoms, the complete inability to work, and medical diagnosis almost simultaneously, Ross clearly had knowledge of her employment-related disease prior to ceasing her employment with Baldwin Filters. Baldwin Filters and Liberty Mutual rely upon this distinction and assert the well-established rule in Nebraska applicable to latent injuries that the statute of limitations begins to run once the employee has knowledge of a compensable injury. See, *Gloria v. Nebraska Public Power Dist.,* 231 Neb. 786, 438 N.W.2d 142 (1989); *Cemer v. Huskoma Corp.,* 221 Neb. 175, 375 N.W.2d 620 (1985); *Maxey v. Fremont Department of Utilities,* 220 Neb. 627, 371 N.W.2d 294 (1985); *Thomas v. Kayser-Roth Corp.,* 211 Neb. 704, 320 N.W.2d 111 (1982); *McGahan v. St. Francis Hospital,* 200 Neb. 406, 263 N.W.2d 845 (1978); *Novak v. Triangle Steel Co.,* 197 Neb. 783, 251 N.W.2d 158 (1977); *Ohnmacht v. Peter Kiewit Sons Co.,* 178 Neb. 741, 135 N.W.2d 237 (1965).

Baldwin Filters and Liberty Mutual go on to argue that knowledge that there is a compensable disability and not awareness of the full extent thereof is controlling. See *McGahan, supra.* While a well-based argument, it ignores the fact that a different rule has been applied to occupational diseases.

Accordingly, Ross argues that *Hull v. Aetna Ins. Co.,* 247 Neb. 713, 529 N.W.2d 783 (1995), is controlling. In that case, Hull, a dentist, experienced an outbreak of contact dermatitis in 1960 and again in 1987. He subsequently suffered a severe outbreak in June 1988, causing him to miss approximately 1 week of work, and his condition, thereafter, progressively worsened.

On March 13, 1989, a dermatologist treating the contact dermatitis recommended that Hull cease practicing dentistry. Another physician made the same recommendation that same month. In January 1991, Hull ceased practicing dentistry. He then sought workers' compensation benefits.

The issue presented in *Hull* was, for liability purposes, whether the last injurious exposure rule focuses on the date of injury or on the date of last exposure to the disability-causing substance. In its analysis, the court had to first determine, in the case of an occupational disease, the date of injury. It stated that "an afflicted employee can be held to be injured only when the accumulated effects of the substance manifest themselves, which is when the employee becomes disabled and entitled to compensation." *Id.* at 719, 529 N.W.2d at 789 (citing *Osteen, supra*). The *Hull* court then had to determine, as we do here, in the case of an occupational disease, the date upon which the employee becomes "disabled." It stated:

Hull suffered from contact dermatitis due to substances in the workplace in 1960 and 1987 through 1990. It was not until March 1989, however, that his occupational disease manifested itself to a level of disability. Therefore, Hull became disabled and entitled to the workers' compensation he seeks on March 13, 1989 . . . .

249 Neb. at 719, 529 N.W.2d at 789.

■ Thus, while Baldwin Filters and Liberty Mutual correctly point out that the statute of limitations was not an issue in *Hull*, that court clearly defined the date of disability in the case of occupational diseases.

We also note that Hull was not found to be disabled until March 1989, although he had evidently experienced at least temporary disability as early as 1988, when he missed approximately a week of work as a result of the contact dermatitis. Using that court's rationale, we likewise find that Ross became disabled and first entitled to the workers' compensation benefits she seeks in April 1994. We reach this result, even though Ross, like Hull, was affected somewhat in her employment before the date of disability, as evidenced by Baldwin Filters' adjusting her

work environment in response to her complaints and possibly by a minimal amount of missed work.

This analysis is consistent with the definition and general treatment of the concept of "disability" under Nebraska workers' compensation laws. For example, "disability" within the meaning of Neb. Rev. Stat. § 48-128 (Reissue 1993), which addresses preexisting disabilities for the purpose of the Second Injury Fund, is defined as "an employee's diminution of employability or impairment of earning power or capacity." *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 909, 464 N.W.2d 343, 349 (1991). For the purpose of Neb. Rev. Stat. § 48-121(1) and (2) (Reissue 1993) (schedule of compensation), "disability" is defined "in terms of employability and earning capacity." *Minshall v. Plains Mfg. Co.*, 215 Neb. 881, 885, 341 N.W.2d 906, 909 (1983). Ross' employability at Baldwin Filters first diminished in April 1994, when her condition had progressed to the point where her employment there had to cease.

Thus, we conclude that the statute of limitations did not begin to run until April 1994, and the trial court erred in dismissing Ross' petition. As such, we need not address Ross' second assigned error, that the trial court erred in allowing Baldwin Filters and Liberty Mutual to amend their answer to include the statute of limitations defense. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

*Causation.*

Regarding Ross' third assigned error, we agree with the review panel that the language of the trial court's order of dismissal which addressed the causation issue is unclear. We cannot determine whether the trial court's comments were based on a conclusion that the medical evidence was insufficient as a matter of law to establish causation or on a factual finding that causation had not been proved by a preponderance of the evidence. Under the provisions of Workers' Comp. Ct. R. of Proc. 11 (1995), all parties are entitled to reasoned decisions which contain findings of fact and conclusions of law which clearly and concisely state and explain the rationale for the decision. See *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424

(1996). The rule also requires a specification of the evidence upon which the judge relied. *Id.*

If the trial court determined the medical evidence to be legally insufficient because the degree of certainty required of the medical evidence was not met, such conclusion is contrary to law, as correctly noted by the review panel. See *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996) (in workers' compensation cases, expert medical testimony couched in terms of "probability" is sufficient). We, of course, render no opinion as to the weight to be given such testimony, as that issue is not before us.

The order of the review panel affirming the trial court's dismissal based on the running of the statute of limitations was legally erroneous and thus in excess of its powers. The order is reversed and the judgment of dismissal vacated. The cause is remanded to the compensation court with directions that the judge who conducted the initial hearing enter an order on the evidence adduced which complies with rule 11, and for such further review thereof as the parties may institute under law.

## CONCLUSION

In workers' compensation cases involving a claim for occupational diseases, the statute of limitations begins to run only when the accumulated effects of the disease manifest themselves, which is when the employee becomes disabled and entitled to compensation. Therefore, the statute of limitations began to run on Ross' claim in April 1994, and her petition is not barred by the statute of limitations.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.