DALE WATSON, APPELLEE, V.
OMAHA PUBLIC POWER DISTRICT, APPELLANT.
622 N.W.2d 163

Filed January 30, 2001.    No. A-00-493.

James L. Quinlan, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

Robert E. O'Connor, Jr., for appellee.

Irwin, Chief Judge, and Inbody and Carlson, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Omaha Public Power District (OPPD) appeals from an order entered by a review panel of the Nebraska Workers' Compensation Court affirming an award of a trial judge of the compensation court granting compensation for injury caused to Dale Watson by an occupational disease. Because we find that the compensation court erred in establishing the date of injury, we modify the award and affirm as modified.

## II. BACKGROUND

Watson was employed by OPPD from 1979 through December 19, 1996. While at OPPD, he was exposed to asbestos dust through his position in central maintenance. Although he experienced a lack of energy and shortness of breath as early as 1992, he was unaware that it was related to asbestos exposure. Watson attempted to alleviate the problem by transferring to an OPPD plant which required less physical labor, but he did not cease his employment with OPPD. On December 19, 1996, Watson's employment with OPPD was terminated for disciplinary reasons. It is undisputed that the termination was unrelated to the prior asbestos exposure.

On June 16, 1997, Watson began working for Campbell's Soup Company (Campbell's), and his breathing problems continued. In October 1997, Watson was first diagnosed with pulmonary asbestosis by Dr. Jorge Alvarez. Although the diagnosis occurred while Watson was employed by Campbell's, the trial judge determined that Watson's last injurious exposure to asbestos occurred during his 17-year period of employment with OPPD. Watson was subsequently asked to resign from Campbell's because he had failed to disclose certain relevant information on his employment application. He resigned on February 11, 1998, and it is undisputed that his resignation was again unrelated to his breathing problems or prior asbestos exposure. Watson was working as a security guard at the time of trial.

On August 19, 1998, Watson filed a petition with the compensation court seeking benefits. A hearing was held on April 2, 1999, in which Watson testified on his own behalf and submitted, inter alia, the deposition of Dr. Alvarez and a vocational rehabilitation counselor's vocational evaluation and earnings capacity assessment. Dr. Alvarez testified in his deposition that Watson has a moderate degree of impairment and estimated that Watson's asbestosis became partially disabling in January 1998. Alvarez also indicated that Watson will not be able to return to his "usual occupation" and recommended that he work in a clean, dry environment and refrain from heavy lifting.

On May 3, 1999, the trial judge entered an award finding that based on Dr. Alvarez' testimony, Watson became disabled on January 8, 1998, when employed by Campbell's. The court

found that Watson suffered a 30-percent loss in earning capacity. The court further determined that Watson was entitled to vocational rehabilitation services and ordered OPPD to pay existing and future medical and hospital expenses.

On April 4, 2000, a review panel of the compensation court affirmed the trial judge's decision, with one judge dissenting. OPPD timely filed this appeal.

## III. ASSIGNMENTS OF ERROR

On appeal, OPPD has assigned four errors which can be consolidated for discussion to one: The compensation court erred in finding that Watson's date of injury was January 8, 1998.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a decision of the Workers' Compensation Court only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000); *Brouilette v. DBV Enters.*, 9 Neb. App. 757, 619 N.W.2d 482 (2000).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Owen v. American Hydraulics, supra.* Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determina-

tions. *Owen v. American Hydraulics, supra; Miller v. E.M.C. Ins. Cos., supra.*

## 2. DATE OF INJURY

Watson is seeking compensation benefits from OPPD for personal injury caused by the occupational disease pulmonary asbestosis. On appeal, OPPD does not dispute that Watson has asbestosis and that his last injurious exposure to asbestos was during the course and scope of his employment with OPPD. OPPD asserts only that the compensation court incorrectly identified the date of injury as January 8, 1998, and asserts that the proper date of injury should have been a later date.

At trial, Dr. Alvarez estimated that asbestosis began interfering with Watson's ability to work in January 1998. Relying on that testimony, the trial judge found that Watson's date of injury was January 8, 1998. However, OPPD argues that Watson's correct date of injury could not have been January 8, 1998. OPPD asserts that case law defines the date of injury in occupational disease cases as the date that the disease renders the employee "unable to work." Brief for appellant at 6. OPPD therefore asserts that because the evidence indicates that Watson continued working for OPPD beyond January 8, 1998, the disease had not rendered him unable to work by that date and that the court, therefore, erred in setting January 8, 1998, as the date of injury.

### (a) Historical Development of Date of Injury

The difficulty of determining the date of injury in occupational disease cases was first addressed by the Nebraska Supreme Court in *Hauff v. Kimball*, 163 Neb. 55, 77 N.W.2d 683 (1956). After working as a granite cutter for approximately 30 years, the employee in *Hauff* contracted an occupational disease from inhaling silica dust. He first began experiencing breathing difficulties in the spring of 1954, became unable to work on July 3, 1954, and was hospitalized on August 1, 1954. He died on November 3, 1954. His widow was awarded disability benefits from July 12, 1954, through November 3, 1954, and dependency benefits thereafter. On appeal, the Supreme Court noted:

"Where an occupational disease results from the continual absorption of small quantities of some deleterious sub-

stance from the environment of the employment over a considerable period of time, an afflicted employee can be held to be 'injured' only when the accumulated effects of the substance manifest themselves, which is when the employee becomes disabled and entitled to compensation; *and the 'date of injury', within the meaning of the Workmen's Compensation Act, is the date when the disability is first incurred,* and the six months' period of limitations runs from that date and not from the time the employee has knowledge of the disease."

(Emphasis supplied.) *Hauff v. Kimball,* 163 Neb. at 61, 77 N.W.2d at 687 (quoting *Associated Indemnity Corp. v. Industrial Accident Commission,* 124 Cal. App. 378, 12 P.2d 1075 (1932)). The Supreme Court then determined that the employee's cause of action accrued when the injury culminated in his disability in July 1954, when he became unable to work.

In *Osteen v. A. C. and S., Inc.,* 209 Neb. 282, 307 N.W.2d 514 (1981), the Supreme Court again found that the date of injury in an occupational disease case coincided with the employee's inability to work. The employee had worked as an insulator from 1941 until he ceased working on February 1, 1977. On that date, he entered the hospital for diagnosis of an abdominal disorder, and a form of abdominal cancer caused by exposure to asbestos was subsequently discovered during surgery. The employee died on March 18, 1977. After his death, based on the last injurious exposure rule, his widow and son were awarded benefits from an employer he had worked for in 1974 and 1975. The employer argued that the injury had occurred in 1974 or 1975 and asserted that the claim was barred by the 6-month statute of limitations. Citing *Hauff v. Kimball, supra,* the Supreme Court determined that the earliest date which the disease had manifested itself in disability was February 1, 1977, the date the employee ceased working because of the disease.

In *Hull v. Aetna Ins. Co.,* 247 Neb. 713, 529 N.W.2d 783 (1995), the Supreme Court was presented with a dispute over which insurance carrier was liable for a dentist's compensation benefits arising out of an occupational disease. In 1987, the employee began experiencing dermatitis and pulmonary problems caused by items and chemicals used in his dental practice.

The occupational disease caused him to miss, in the aggregate, approximately 1 week of work in 1988. On March 13, 1989, a dermatologist recommended that the employee cease practicing dentistry. The employee then decreased his practice to less than 10 hours per week, but did not completely terminate his work until January 1991. Citing *Hauff v. Kimball, supra,* the Supreme Court held that the date which determines liability is the date that the employee becomes disabled from rendering further service. The court found that the employee became disabled and entitled to compensation benefits on March 13, 1989, the date of the doctor's recommendation and the employee's reduction of his dental practice to less than 10 hours per week. This case is slightly at variance with the preceding and subsequent cases to the extent the Supreme Court found the date of injury occurred when the employee reduced his workload to less than 10 hours per week, as opposed to completely ceasing.

In the case of *Ross v. Baldwin Filters,* 5 Neb. App. 194, 557 N.W.2d 368 (1996), this court affirmed the rule that the date of injury equates to the date when the employee's condition causes him or her to cease employment. In *Ross,* the employee began working for Baldwin Filters on September 20, 1976. She subsequently developed skin problems associated with her job, and on April 22, 1994, her doctor recommended that she quit her job because of dermatitis. She returned to work on May 3, but immediately broke out into a rash and quit her job on May 5. The employee alleged that she sustained compensable injuries on or about May 5, 1994, while employed by Baldwin Filters. The compensation court found her claim to be barred by the statute of limitations because she knew as early as 1986 that she was suffering from an occupational disease which she believed to be caused by her employment. Based on *Hauff v. Kimball,* 163 Neb. 55, 77 N.W.2d 683 (1956), and *Osteen v. A. C. and S., Inc.,* 209 Neb. 282, 307 N.W.2d 514 (1981), this court reversed and found that the employee became disabled and was first entitled to benefits in April 1994. As the Supreme Court had done in prior cases, this court determined that the date of injury coincided with the date on which the employee's condition had progressed to the point where her employment ceased because of the occupational disease.

■ *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998), is relevant for another facet of the date of injury issue. *Jorn* specifically deals with and discusses the situation wherein an employee has contracted an occupational disease and must cease a particular *type of work*, rather than all work. In *Jorn*, the Supreme Court held that an employee is entitled to benefits when an occupational disease forces him or her to cease a *type of employment* even though the employee is able to perform other types of employment. In *Jorn*, the employee began working for Pigs Unlimited in 1976 and suffered from an occupational disease which arose out of and in the course of his employment with Pigs Unlimited due to long term exposure to "hog dust." In the fall of 1994, he sought medical attention because of breathing difficulties, and eventually, three doctors recommended he go into a different line of work. The employee terminated his employment with Pigs Unlimited on December 15, 1995. The compensation court determined that the employee's date of injury was, therefore, December 15, 1995. However, the compensation court found no evidence of a permanent physical impairment because the employee was asymptomatic after ceasing his employment at Pigs Unlimited, and the court therefore denied recovery for loss of earning capacity. The Supreme Court determined that the employee was not precluded from making a claim for loss of earning capacity because he had demonstrated that he was forced to cease a *type of employment* because of the occupational disease and that he was permanently restricted from returning to his former *type of employment*.

Finally, although it concerns a repetitive trauma injury rather than an occupational disease, the recent opinion in *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999), contains explicit language indicating how the Supreme Court continues to view the issue of date of injury in the context of repetitive trauma and occupational disease cases:

> The issue presented is whether an employee who sustains an injury during the course of employment must discontinue employment and seek medical treatment. Under existing law, cessation of employment is a requirement regardless of whether the injury arises from an accident or an occupational disease. In either event, the injury must be

such that the employee *discontinues employment and seeks medical treatment. . . .*

. . . .

Both accidents and occupational diseases have specific requirements which must be met in order for compensation to be received. One requirement is common to both. The injury must result in a disability, and the disability must be such that the employee can no longer perform the work required.

(Emphasis supplied.) *Id.* at 388-89, 603 N.W.2d at 418-19.

■ The case law thus reveals that in the context of occupational disease cases, the standard remains that the date of injury is the date on which the effects of the occupational disease manifest themselves in disability. The effects are considered to manifest themselves in disability when the employee's diagnosed condition progresses to the point where his or her employment or type of employment ceases.

### (b) Application and Resolution

In the present case, the trial judge determined that Watson's date of injury was January 8, 1998, based on a doctor's opinion of when the occupational disease began interfering with Watson's ability to work. However, there is no evidence in the record to support a finding that asbestosis caused Watson to cease any work or any type of work, either before or on that date. The record reveals that his prior employment with OPPD had been terminated for reasons unrelated to his occupational disease and that he continued working for Campbell's beyond the January 8 date. Under our present legislative scheme and the pertinent case law in the workers' compensation realm, we are bound by the rule of law to conclude that Watson was not entitled to compensation benefits as of January 8, 1998, because the occupational disease had not resulted in any cessation of employment by that date. However, our inquiry does not end with that conclusion.

The record reveals that Watson's education and training after high school included participation in a welding program at a community college for 1½ years and a 4-year steamfitter apprenticeship program while employed at OPPD. This training and

experience served him well at both OPPD and Campbell's where he was employed doing heavy maintenance and repair work.

After Watson was forced to resign from Campbell's on February 11, 1998, the record reveals that he ultimately took a job as a security guard, outside the realm of his prior education and experience. He testified about why he took employment outside his area of expertise:

Q. And then after that you found work as a security guard; is that right?

A. That's correct.

Q. Have you looked for other types of work?

A. Yes.

Q. Dr. Alvarez tell you what he didn't want you to do with regard to exposures and things?

A. Yes.

Q. What's your understanding of that?

A. That there's a weight limit and there has to be a clean and dry environment.

Q. Have you ever worked with a weight limit or a clean and dry environment in your life prior to this, Mr. Watson?

A. No, sir.

Q. Have you found it hard to find employment with those limitations?

A. Yes, sir.

Q. And as far as you're concerned, this security job is the best you can do right now?

A. Yes, sir.

Additionally, the vocational rehabilitation counselor stated in the vocational evaluation and earnings capacity assessment, "I believe [Watson] is presently capable of working in the $6.00 to $8.00 an hour range," and "I believe he is not able to return to his former employment of steamfitter or maintenance mechanic—heavy work, or the field of his training, welding, which, though medium work, exposes one to fumes and a dirty work environment."

Although his occupational disease was not the cause of Watson's leaving his employment at Campbell's, there is sufficient evidence in the record to indicate that it has caused him to cease working in that type of employment. We therefore con-

clude that Watson's date of injury is February 11, 1998, the date he was forced to resign from Campbell's and the date from which he has been precluded from working in the type of employment commensurate with his training and experience. He is entitled to benefits commencing on that date. See *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998). See, also, *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824 (Iowa 1992). We modify the compensation court's award to reflect this proper date of injury.

Because Watson's average weekly wage on February 11, 1998, was the same as his average weekly wage on January 8, 1998, the amount of the benefits awarded by the compensation court based on the incorrect date of injury remain correct. As such, we affirm the benefits awarded by the compensation court.

## V. CONCLUSION

We conclude that the trial court was clearly wrong when it found a date of injury not supported by sufficient competent evidence that occupational disease caused Watson to cease any employment or type of employment as of that date. We modify the award to reflect that Watson's actual date of injury is February 11, 1998, the date his occupational disease caused him to cease the type of employment he had pursued for over 17 years. Because Watson's average weekly wage on that date was the same as on the date used by the compensation court, we affirm the benefits awarded by the compensation court.

AFFIRMED AS MODIFIED.