John THOMMES, individually and d/b/a Thommes & Thomas Land Clearing, Appellant,

v.

MILWAUKEE MUTUAL INSURANCE COMPANY, Respondent.

No. C9–00–1393.

Court of Appeals of Minnesota.

Feb. 13, 2001.

William R. Joyce, Faegre & Benson, LLP, Minneapolis, MN, for appellant.

Jeanne H. Unger, Paul B. Kohls, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Presiding Judge, ANDERSON, Judge, and MULALLY, Judge.[*]

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

G. BARRY ANDERSON, Judge

Appellant, a contractor, accidentally destroyed an adjacent property owner's trees while clearing land as part of a project for a client. After the property owner brought an action for damages, appellant sought a declaratory judgment to compel respondent insurance company to defend and indemnify appellants for losses associated with the damages action. The district court granted respondent's motion for summary judgment. Appellant argues the district court erred by granting summary judgment on the grounds that (1) respondent insurer had no duty to defend appellant against a negligence action brought by the adjacent property owner and (2) the insurance policy exclusions barred coverage for appellant's accidental destruction of the trees. Because the policy exclusions at issue are business risk exclusions that do not apply to injured third parties, we reverse.

## FACTS

The material facts are not disputed. In September 1996, appellant Thommes and Thomas Land Clearing contracted with Richard Knutson, Inc., to clear trees from land owned by HHA Development, Inc., Dean Morlock, and Charles Vig ("HHA"). John and Donna Krajewski own adjacent property. Before appellant's employees commenced clearing, Dean Morlock pointed out a tree marking the property line up to which appellant was to cut and clear trees. When asked whether certain brush and trees were on the adjacent property, Morlock told appellant's employees not to worry because his sister owned the property. Appellant's employees cleared the trees as instructed, but later learned they had destroyed trees on the Krajewski property.

Krajewski brought an action against appellant, seeking damages. Appellant tendered defense of the action to appellant's insurance carrier, respondent Milwaukee Insurance Company, which subsequently refused to defend, and also refused to indemnify appellant for losses resulting from appellant's actions in damaging and destroying trees owned by Krajewski. Respondent's denial was based on two commercial general liability insurance policy exclusions, 2j(5) and 2j(6). Following the insurer's denial of coverage, appellant and Krajewski settled for $15,000.

Appellant then sought a declaratory judgment that respondent had a duty to defend the Krajewski action and a duty to indemnify appellant. Both parties filed motions for summary judgment; the district court granted summary judgment to respondent, holding that policy exclusions 2j(5) and 2j(6) unambiguously denied coverage. Appellant now challenges that ruling.

## ISSUE

Did the district court err as a matter of law in granting respondent summary judgment on the basis that policy exclusions 2j(5) and 2j(6) barred coverage for the trees owned by a third party which were lost or damaged as a result of appellant's actions?

## ANALYSIS

Appellant claims that the district court erred as a matter of law by reading the insurance policy provisions to exclude coverage. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, we determine whether any issues of material fact exist and whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosp. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). We view the evidence in the light most favorable to the party against whom summary judgment was granted.

*Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■ The interpretation and construction of insurance policy provisions are matters of law which this court reviews de novo. *Haarstad v. Graff,* 517 N.W.2d 582, 584 (Minn.1994). Whether an insurer has a duty to defend an insured is also a question of law which this court reviews de novo. *Franklin v. Western Nat'l Mut. Ins. Co.,* 574 N.W.2d 405, 406 (Minn.1998). The duty to defend is broader than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Lenzmeier,* 309 Minn. 134, 139, 243 N.W.2d 153, 156 (1976). An insurer's duty to defend is determined by comparing the allegations of a complaint with the relevant policy language. *Garvis v. Employers Mut. Cas. Co.,* 497 N.W.2d 254, 256 (Minn.1993). A duty to defend generally covers those claims that arguably fall within the scope of the policy. *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 415 (Minn.1997).

Thus, in order for respondents to have owed appellant a duty to defend, appellant's claims must arguably be covered by the policy.

■ Insurance coverage exclusions are generally construed narrowly, and ambiguous exclusions must be construed in the insured's favor. *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992). The insurer has the burden of proving that a policy exclusion applies. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.,* 383 N.W.2d 645, 652 (Minn. 1986).

■ The relevant portions of appellant's commercial general liability (CGL) insurance policy read:

I. Section I—Coverages

Coverage A. Bodily Injury and Property Damage Liability

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

* * * *

2. Exclusions

This insurance does not apply to:

* * * *

j. Damage to property

"Property damage" to:

* * * *

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * * *

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * * *

19. "Your work" means:

a. Work or operations performed by you or on your behalf * * *.

■ Appellant argues that exclusions 2j(5) and 2j(6) are business risk exclusions, and that third-party losses are outside the scope of the exclusions under the business risk doctrine. The business risk doctrine is the expression of a public policy applied to the insurance coverage provided under commercial general liability policies. *O'Shaughnessy v. Smuckler Corp.,* 543 N.W.2d 99, 102 (Minn.App.1996), *review denied* (Minn. Mar. 28, 1996). Reduced to its simplest terms, the risk that an in-

sured's product will not meet contractual standards is a business risk not covered by a general liability policy. *Bor–Son Bldg. Corp. v. Employers Comm. Union Ins. Co.*, 323 N.W.2d 58, 63 (Minn.1982). To ensure predictable and affordable insurance rates, the business risk doctrine limits an insurer's assumption of risk to those risks that are beyond the "effective control" of the insured. *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 234–35 (Minn.1986).

 Business risks, then, are those risks which management cannot effectively avoid because of the nature of the business operations; and risks which relate to the repair or replacement of faulty work or products. These risks are a normal, foreseeable and expected incident of doing business and should be reflected in the price of the product or service rather than as a cost of insurance to be shared by others.

*Sphere Drake Ins. Co. v. Tremco, Inc.*, 513 N.W.2d 473, 477 (Minn.App.1994) (citations omitted), *review denied* (Minn. Apr. 28, 1994).

 Significantly, under the business risk doctrine, harm to the property of a third party caused by the insured's defective work is *not* excluded from coverage. *Id.* at 479. *Sphere Drake* explains that a comprehensive liability policy

is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

\* \* \* \*

When the insured's faulty workmanship results in damage to the property of a third party \* \* \* such third-party property damage is not excluded from coverage by business risk doctrine.

*Id.* at 478–79 (citation omitted).

Citing *O'Shaughnessy*, 543 N.W.2d at 105, respondent asserts that business risk doctrine principles, including the notion that coverage extends to damage to third-party property, do not apply if the policy contains express exclusions barring coverage. This is an overly broad reading of *O'Shaughnessy's* holding.

In *O'Shaughnessy*, the CGL insurer for a general contractor sought declaratory judgment that it was not obligated to provide coverage to the general contractor or architect for the cost of repairing defective work of the general contractor or its subcontractors. *Id.* at 101. The CGL policy contained a standard exclusion, (*l*), which excluded from coverage property damage to the insured's work arising out of the insured's work. *Id.* at 103–04. An exception to (*l*) provided that the exclusion did not apply "if the damaged work \* \* \* was performed on [the insured's] behalf by a subcontractor." *Id.* at 104.

*O'Shaughnessy* recognized that CGL policy exclusion (*l*) is consistent with business risk doctrine principles. *See id.* at 104 (stating change of words in exclusion (*l*) did not abrogate the business risk doctrine as it applied to that exclusion). But *O'Shaughnessy* also explained that an express *exception* to an exclusion can limit the scope of the business risk doctrine. *Id.* at 105. In *O'Shaughnessy*, the application of exclusion (*l*) was limited by the express language of the exception, which restored coverage for work performed by subcontractors. *Id.* (concluding that "the exception at issue was intended to narrow" the business risk doctrine.)

The policy exclusions here, 2j(5) and 2j(6), may be read as the embodiment of the business risk doctrine principles. *See Knutson*, 396 N.W.2d at 236–37 (reading policy exclusion language together with business risk doctrine); *Sphere Drake*, 513 N.W.2d at 477 (suggesting that exclusions themselves may set forth business risk doctrine). Other jurisdictions have squarely and sensibly characterized 2j(5) and 2j(6) as business risk exclusions. *See, e .g., Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 76–77 (Mo.1988) (noting

that an exclusion for property damage to "that particular part of real property on which * * * [the insured] is performing operations" is a business risk exclusion); *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.,* 203 Ga.App. 508, 417 S.E.2d 197, 201 (1992) (same); *LISN, Inc., v. Commercial Union Ins. Cos.,* 83 Ohio App.3d 625, 615 N.E.2d 650, 653–54 (1992) (recognizing 2j(6) as a business risk exclusion). *See also* Gregory G. Schultz, *Commercial General Liability Coverage of Faulty Construction Claims,* 33 Tort & Ins. L.J. 257, 266 (1997) (explaining that the standard CGL policy exclusions (j), (k), (*l*), (m), and (n) are generally known as "business risk" exclusions); 9 George J. Couch et al., *Couch on Insurance* § 129:13 (3d ed.1995) (citing cases addressing faulty workmanship and similar CGL exclusions, and stating that business risk exclusions do not extend to third-party damage caused by insured's defective work).

■ We conclude that the 2j(5) and 2j(6) exclusions are business risk exclusions designed to exclude coverage for faulty workmanship that is within the insured's control. In appellant's policy, exclusions 2j(5) and 2j(6) share an exception: the exclusions do not apply to "liability assumed under a sidetrack agreement," which concerns agreements between railroad companies and their customers. Exclusion 2j(6) has an additional exception: it does not apply to "property damage" included in the "products completed operations hazard," which concerns completed projects.

The facts of this case do not invoke the exceptions to 2j(5) and 2j(6), nor do the exceptions expressly limit the scope of the business risk doctrine in a manner that would allow us to conclude that the doctrine does not apply. By applying the business risk doctrine in this case, damage to third-party property caused by appellant's work is not excluded from coverage. The parties do not dispute that, in the course of clearing the HHA property, appellant's employees accidentally damaged third-party property by clearing trees located on property owned by a third party. Accordingly, we conclude that exclusions 2j(5) and 2j(6) do not operate to deny appellant coverage.

We hold that the district court erred as a matter of law by determining that the policy exclusions barred coverage and by determining that respondent had no duty to indemnify appellant. Because we reverse on this basis, we do not reach appellant's claims that the policy exclusions are ambiguous as a matter of law.

## DECISION

The district court erred as a matter of law by holding that insurance policy exclusions 2j(5) and 2j(6) barred coverage and relieved respondent of a duty to defend appellant from an action for real property damages brought by a third party. The policy exclusions at issue, 2j(5) and 2j(6), are business risk exclusions that do not apply to injuries caused by the insured's work and that are sustained by third parties.

**Reversed.**