John THOMMES, individually and
d/b/a Thommes & Thomas Land
Clearing, Respondent,

v.

MILWAUKEE INSURANCE
COMPANY, Petitioner,
Appellant.

No. C9–00–1393.

Supreme Court of Minnesota.

April 18, 2002.

Jeanne H. Unger, Paul B. Kohls, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for Appellant.

William R. Joyce, Katherine A. Golden, Faegre & Benson, LLP, Minneapolis, for Respondent.

## OPINION

PAGE, Justice.

Thommes & Thomas Land Clearing (Thommes) is a partnership engaged in the business of clearing and grubbing land for construction projects. In September 1996, Thommes entered into a subcontract to clear and grub land for a commercial development owned by Dean Morlock, Charles Vig, and HHA Development, Inc. (collectively, HHA). Adjacent to the HHA property was land owned by Morlock's sister and her husband, Donna and John Krajewski (collectively, the Krajewskis). Complying with Morlock's instructions as to the area to be cleared and grubbed, Thommes cleared and grubbed approximately one-half acre of the Krajewskis' land, damaging grass and a number of their trees, shrubs, and other plants. That land was not a part of the HHA property and the Krajewskis did not consent to it being cleared and grubbed. The Krajewskis brought an action against Thommes, among others, for the damage done to their property. Thommes tendered defense of the Krajewskis' lawsuit to its commercial general liability (CGL) insurance carrier, Milwaukee Insurance Company (Milwaukee). Milwaukee declined to either defend or indemnify Thommes, contending that exclusions 2j(5) and 2j(6) of Thommes's CGL policy excluded the damage to the Krajewskis' property from coverage.

Thommes then initiated this action, seeking a declaratory judgment that Milwaukee had a duty to defend and indemnify under Thommes's CGL policy. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of Milwaukee. The court of appeals, relying on the "business risk doctrine," reversed and granted summary judgment in favor of Thommes. *Thommes v. Milwaukee Mut. Ins. Co.*, 622 N.W.2d 155, 160 (Minn.App.2001). We granted Milwaukee's petition for review. Based on our conclusion that exclusions 2j(5) and 2j(6) of Thommes's CGL policy do not bar coverage of the damage to the Krajewskis' property, we affirm.

On review of a summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Burlington N. R.R. v. Comm'r of Revenue*, 606 N.W.2d 54, 57 (Minn.2000); *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992). The parties in this case agree as to the material facts, but disagree with respect to the proper interpretation of Thommes's CGL policy. The interpretation of an insurance policy is a question of law reviewed de novo. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001); *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn.1994). The question of whether an insurer has a duty to defend or indemnify is also a legal question subject to de novo review. *Metro. Prop. & Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 299 (Minn.1999); *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn.1998).

It is well-established that general contract principles govern the construction of insurance policies, and that insurance policies are to be interpreted to give effect to the intent of the parties. *Nathe Bros. v.*

*Am. Nat'l Fire Ins. Co.,* 615 N.W.2d 341, 344 (Minn.2000). When the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning. *Medica, Inc. v. Atl. Mut. Ins. Co.,* 566 N.W.2d 74, 77 (Minn.1997); *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.,* 383 N.W.2d 645, 652 (Minn. 1986). "Because most insurance policies are presented as preprinted forms, which a potential insured must usually accept or reject as a whole, ambiguities in a policy are generally resolved in favor of the insured." *Nathe Bros.,* 615 N.W.2d at 344 (citing *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn. 1985)).

▮▮▮▮ Exclusions contained in an insurance policy are as much a part of the insurance contract as any other part, and must be given the same consideration in determining what the policy covers. *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). The language of an exclusionary provision in an insurance policy is to be interpreted in accordance with the expectations of the insured. *Walser,* 628 N.W.2d at 613; *Am. Family Mut. Ins. Co. v. Peterson,* 405 N.W.2d 418, 422 (Minn.1987). Insurance contract exclusions are construed strictly against the insurer. *Walser,* 628 N.W.2d at 613; *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 314 (Minn.1995).

Milwaukee argues that the court of appeals improperly based its decision on the business risk doctrine and largely ignored the actual language contained in Thommes's CGL policy. In reaching its decision, the court of appeals, instead of applying our rules for construing insurance contract exclusions, focused its analysis on the so-called "business risk doctrine." The court of appeals stated that the "business risk doctrine is the expression of a public policy applied to the insurance coverage provided under commercial general liability policies." *Thommes,* 622 N.W.2d at 158. Explaining that doctrine, the court of appeals stated that "the risk that an insured's product will not meet contractual standards is a business risk not covered by a general liability policy." *Id.* at 158–59. In contrast, the court of appeals continued, "harm to the property of a third party caused by the insured's defective work is *not* excluded from coverage." *Id.* at 159. The court of appeals read exclusions 2j(5) and 2j(6) as "the embodiment" of the business risk doctrine and, significantly, rejected Milwaukee's argument that business risk doctrine principles do not apply if the policy contains express exclusions barring coverage. *Id.* at 159–60.

We have discussed the intersection of business risk principles and the coverage provided by a contractor's CGL[1] policy in two cases. *See Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 396 N.W.2d 229 (Minn.1986); *Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co.,* 323 N.W.2d 58 (Minn.1982). In both cases, we used business risk principles as a means of illuminating the underlying purpose of CGL insurance. Notably absent from *Bor–Son* and *Knutson* is any indication that these principles serve as the foundation for a separate "business risk doctrine" that operates to override the express language of policy exclusions.

---

**1.** Before 1986, "commercial general liability insurance" was called "comprehensive general liability insurance." F. Malcolm Cunningham, Jr. & Amy L. Fischer, *Insurance Coverage in Construction–The Unanswered Question,* 33 Tort & Ins. L.J. 1063, 1068 n. 19 (1998).

In *Bor–Son*, the owner of two apartment buildings brought an action against the building contractor after the buildings developed water leakage problems. 323 N.W.2d at 60. After the owner and contractor settled the claim, the contractor brought an action against its CGL insurer seeking a declaratory judgment that the insurer was obligated to defend and indemnify. *Id.* at 61.

In resolving this issue, we analyzed the risks intended to be covered by CGL policies. As part of the analysis, we identified two types of risk undertaken by an insured-contractor. The first, termed a "business risk," is the risk that the insured "may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity." *Id.* at 63 (quoting Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L.Rev. 415, 441 (1971)). The court concluded that this type of risk was not what the contractor's CGL policy was "designed to protect against." *Id.* (quoting Henderson, 50 Neb. L.Rev. at 441).

The second type of risk faced by a contractor is the risk that its work or product will cause bodily injury or property damage to other property. *Id.* at 63–64. We observed that it was this type of risk, which may give rise to tort liability to third parties, that CGL policies are intended to insure against. *Id.*

Applying these principles, the court held that the owner's damages flowed from the contractor's breach of contract, that the damages were the result of the contractor's faulty workmanship, and that such liability on the part of the contractor was not within the coverage provided by its CGL policy. *Id.* at 63.

In *Knutson*, the owner of an apartment complex brought suit against a general contractor to recover the cost of repairing structural damage to the complex. 396 N.W.2d at 230–31. The general contractor then brought an insurance coverage action against its CGL insurance carriers. *Id.* at 230. In upholding summary judgment for the insurers, we reaffirmed our holding in *Bor–Son* that a CGL policy "does not provide coverage for claims of defective materials and workmanship giving rise to a claim for damage to the property itself which is the subject matter of the construction project." *Knutson*, 396 N.W.2d at 235. *Knutson*, like *Bor–Son*, outlined the distinction between excluded contractual business risks and the covered risk of tort liability to third parties. *Knutson*, 396 N.W.2d at 234–35. Applying the language of the policy exclusions before it, the court concluded that coverage was properly denied. *Id.* at 235.

Our review of *Bor–Son* and *Knutson* reveals that the distinction between uncovered business risks arising from contractual liability for defective materials and workmanship and covered risks arising from tort liability to third parties is helpful as a means of informing our understanding of the risks intended to be covered by CGL policies. Other jurisdictions have also found this distinction useful. *See, e.g., Hartford Accident & Indem. Co. v. Pac. Mut. Life Ins. Co.*, 861 F.2d 250, 253 (10th Cir.1988); *Bangert Bros. Constr. Co. v. Ams. Ins. Co.*, 888 F.Supp. 1069, 1073 (D.Colo.), *aff'd*, 66 F.3d 338 (10th Cir. 1995); *Ind. Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1279 (Ind.1980); *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 386 (Me.1989); *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 791–92 (1979); *Fisher v. Am. Family Mut. Ins. Co.*, 579 N.W.2d 599, 605–06 (N.D.1998); *Vernon Williams &*

*Son Constr., Inc. v. Cont'l Ins. Co.*, 591 S.W.2d 760, 763–64 (Tenn.1979); *Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 526 S.E.2d 28, 31–33 (1999).

While the distinction set out in *Knutson* and *Bor–Son* is useful for exploring the fundamental purpose of CGL insurance, it is not dispositive because the parties to an insurance contract may agree to coverage that is different in scope. "[P]arties are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into." *Am. Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983); *see Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960).

Thus, if parties to an insurance contract demonstrate their intent, using clear and unambiguous language, to exclude the risk of damage to the real property of third parties, then there is no need to look to business risk principles to ascertain whether the policy was intended to cover such risks. *See Nathe Bros.*, 615 N.W.2d at 344 (stating we will avoid an interpretation of an insurance contract that forfeits the rights of the insured unless such an intent is manifest in clear and unambiguous language); *Firemen's Ins. Co. of Newark, N.J. v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982) ("Where the language [of an insurance contract] is unambiguous, we will not render a construction which is more favorable to finding coverage but will apply the phrase to the facts of the case in order to give effect to the plain meaning of the language."). However, in the absence of clear and unambiguous language demonstrating the parties' intent to exclude the risk of liability to third parties, application of the principles set out in *Bor–Son* and *Knutson* to determine the scope of coverage provided by the policy is appropriate. *Cf. Boedigheimer v. Taylor*, 287 Minn. 323, 327, 178 N.W.2d 610, 613 (1970) (stating that there is no need to define or interpret clear and unambiguous language in an insurance contract).

The first step, therefore, in determining whether Thommes's CGL policy covers damage to the Krajewskis' property is to examine the policy language. The policy's statement of coverage provides that Milwaukee "will pay those sums that the insured [Thommes] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Milwaukee has the "right and duty to defend any 'suit' seeking those damages." The policy's definition of "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property." There is no dispute that the damage to the trees, shrubs, grass, and other plants located on the Krajewskis' property constitutes "property damage," as that term is defined in Thommes's CGL policy. The question here is whether the damage to the Krajewskis' property is excluded from coverage by section 2j(5) or section 2j(6).

The exclusion found in section 2j(5) of the policy provides that the insurance does not apply to " '[p]roperty damage' to * * * [t]hat particular part of real property on which you [Thommes] or any contractors or subcontractors working directly or indirectly on your [Thommes's] behalf are performing operations, if the 'property damage' arises out of those operations."

■ Milwaukee asserts that the phrase "that particular part of real property on which you * * * are performing operations" clearly and unambiguously includes property of third parties. In response, Thommes argues that the language is intended to apply only to real property identified in its clearing and grubbing contract, and not to real property owned by a third party. We note that the policy does not define the phrase "that particular part of real property" or the word "operations." Nor is there any express language indicating that the phrase "that particular part of real property" includes the property of third parties or that the word "operations" is intended to include operations performed on the property of third parties. Given the underlying purpose of CGL insurance, we conclude that the phrase "that particular part of real property" and the word "operations," as used in Thommes's CGL policy, are ambiguous. Because insurance contract exclusions are to be construed strictly against the insurer and because, as we made clear in *Nathe Bros.*, 615 N.W.2d at 344, we will avoid an interpretation of an insurance contract that forfeits the rights of the insured unless such an intent is manifest in clear and unambiguous language, we conclude that exclusion 2j(5) does not operate to bar the damage to the Krajewskis' property from coverage. We note that this result is consistent with our analysis in *Bor–Son* and *Knutson* regarding the allocation of risks between contractors and CGL insurers.

■ Having concluded that exclusion 2j(5) does not operate to bar coverage of the damage to the Krajewskis' property, we turn to exclusion 2j(6). The language

of section 2j(6) provides that the insurance does not apply to " '[p]roperty damage' to * * * [t]hat particular part of any property that must be restored, repaired or replaced because 'your [Thommes's] work' was incorrectly performed on it." The policy's definition of "your work" includes "[w]ork or operations performed by you [Thommes] or on your [Thommes's] behalf."

Milwaukee argues that the plain language of exclusion 2j(6) bars coverage of the damage to the Krajewskis' property. Thommes argues that section 2j(6) of the policy is inapplicable because the phrase "your work" refers to intentional acts performed under the clearing and grubbing contract, and the clearing and grubbing of the Krajewskis' property was not performed under the contract. On the facts of this case, it is unnecessary to undertake an interpretation of the term "your work." Assuming for the sake of argument that Thommes's clearing and grubbing of the Krajewskis' property falls within the policy's definition of "your work," [2] it remains unclear whether Thommes's work was incorrectly performed on the Krajewskis' property.

Thommes's clearing and grubbing damaged the Krajewskis' property only because it was performed in the wrong place. Granted, the language of exclusion 2j(6) could be reasonably interpreted to refer to damage that results from work performed on the wrong property. Yet the language could also be reasonably interpreted to refer to the manner, rather than the place, in which the clearing and grubbing was performed. The word "incorrect" denotes faulty or defective. Under this second

**2.** While the facts of this case do not require us to decide the issue, we note that the policy's definition of the term "your work" is silent as

to whether it includes acts performed on the real property of third parties.

reading, then, exclusion 2j(6) would not apply because there has been no allegation that Thommes's work was performed in a faulty or defective manner. In light of these competing interpretations, we conclude that exclusion 2j(6) is ambiguous. Construing the exclusion narrowly against the insurer, as we must, we conclude that exclusion 2j(6) applies only to work performed in a faulty or defective manner and, thus, does not bar coverage of the damage to the Krajewskis' property. As with our interpretation of exclusion 2j(5), our reading of exclusion 2j(6) is consistent with the underlying purpose of CGL insurance identified in *Bor–Son* and *Knutson.*

In sum, given our recognition that the underlying purpose of CGL insurance is to provide coverage for the risk of tort liability to third parties, as opposed to risks that arise as a matter of contract law, *Knutson,* 396 N.W.2d at 234–35; *Bor–Son,* 323 N.W.2d at 63–64, we conclude that the language found in exclusions 2j(5) and 2j(6) of Thommes's CGL policy does not clearly and unambiguously demonstrate the parties' intent to exclude the risk of liability for damage to the real property of third parties. We therefore hold that the damage to the Krajewskis' property is damage to which Thommes's CGL insurance applies, and that Milwaukee is obligated to defend and indemnify Thommes.

Affirmed.

STRINGER, Justice (dissenting).

I respectfully dissent, as two provisions of this insurance policy exclude the property damage to the Krajewskis' land from coverage. I would reverse the court of appeals and hold that Milwaukee is not obligated to defend or indemnify Thommes

for the damage to the Krajewskis' property.

First, I disagree with the majority's conclusion that insurance policy exclusions 2j(5) and 2j(6) are ambiguous. On the contrary, the plain meaning of the provisions clearly provide for an exclusion from coverage. Provision 2j(5) provides that the insurance does not apply to " '[p]roperty damage' to * * * [t]hat particular part of real property on which you * * * are performing operations, if the 'property damage' arises out of those operations." The plain meaning is nothing more or less than what the words say—here the exclusion applies because Thommes was "performing operations" on the Krajewskis' property by clearing and grubbing their land, and damage to the Krajewskis' trees, shrubs, and grass falls squarely within the reference to "property damage." The ambiguity found by the majority regarding whether the exclusion applies to property owned by third parties comes not from the language of the exclusion, but rather from the majority's conception of the underlying purpose of CGL insurance—that is, to cover the risk that a contractor's work will cause bodily injury or property damage to other property, giving rise to tort liability. In so doing the majority limits the definition of "real property on which you * * * are performing operations" to property Thommes *was supposed to be working on* under the clearing subcontract with Richard Knutson, Inc. This is a distortion of the policy language and does not support a conclusion of ambiguity that justifies ignoring the 2j(5) exclusion.

Likewise provision 2j(6) is unambiguous and clearly excludes Thommes's claim for coverage. Provision 2j(6) provides that coverage does not apply to " '[p]roperty damage' to * * * [t]hat particular part of

any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The policy's definition of "your work" includes "[w]ork or operations performed by you or on your behalf"—there is no contention that Thommes did not do the work. As in *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229 (Minn.1986), and *Bor-Son Bldg. Corp. v. Employers Commercial Union Ins. Co.*, 323 N.W.2d 58 (Minn. 1982), the insurance policy does not provide coverage for claims for work incorrectly performed—and what could be more incorrect than performing the work on the wrong property? The exclusion applies to property damage to "[t]hat particular part of any property" that is damaged, and by no stretch of the exclusion terms can it be limited to property that Thommes was hired to clear and grub as it contends, nor can reference to "your work" be limited to the work called for by the terms of the contract. The plain meaning of the exclusion—that it bars coverage for damage resulting from work performed incorrectly—should be given effect.

Finally, the result seems absurd and inconsistent with our long-standing principle that we construe contracts to avoid absurd or unjust results, where reasonably possible. *See Mead v. Seaboard Sur. Co.*, 198 Minn. 476, 478, 270 N.W. 563, 565 (1936). That Thommes should have liability coverage for damages that he inflicted as a trespasser but not have coverage for claims based on work done on the land specified in the clearing contract defies comprehension.

I would reverse the court of appeals.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice STRINGER.

PAUL H. ANDERSON, Justice (dissenting).

I join in the dissent of Justice STRINGER.