SECOND DIVISION
August 8, 2006

No. 1-05-4086

PEKIN INSURANCE COMPANY,          )      Appeal from the
                                        )      Circuit Court of
    Plaintiff-Appellant,          )      Cook County.
                                          )
    v.                                )
                                          )
KEN MILLER, doing business as MILLER    )
TREE SERVICE, CHICAGO TITLE & TRUST  )
COMPANY as Trustee under Trust No.      )
53885, WILLIAM GIVENS, MARILYN GIVENS,)
JOHN MAREK, and HARRIET SLAYTON,    )      Honorable
                                          )      Anthony L. Young,
    Defendants-Appellees.         )      Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

A tree-cutting service operated by Ken Miller was hired to clear trees off certain lots. The trees were cleared from the wrong lots. The tree-cutter's commercial general liability (CGL) insurer, Pekin Insurance Co., refused to defend Miller against lawsuits brought by the owners of the property trees were removed from. This court must decide whether clearing trees off the wrong lots constitutes an "occurrence" under the CGL policy and whether certain exclusions in the policy bar coverage. The trial court found Pekin has a duty to defend. We agree.

FACTS

In the underlying lawsuit, plaintiffs Chicago Title & Trust Co. as Trustee under Trust No. 53885, William Givens, Marilyn Givens, John Marek, and Harriet Slayton, filed suit against Miller, d/b/a Miller Tree Service, and Bineet Sarang, d/b/a Sarang

1-05-4086

Corporation (Sarang), for trespass and violations of the Wrongful Tree Cutting Act, 740 ILCS 185/2 (West 2000). The plaintiffs later added additional counts of negligent trespass. They alleged Sarang hired Miller to remove trees from lots 13, 14, and 15 of a subdivision in Hanover Park, Illinois. Instead, Miller cleared trees from lots 10, 11, and 12, which were owned by the plaintiffs. The lots were cleared without the plaintiffs' consent or permission, causing damage to their property. Relying on the wording in the complaint, we conclude the "property" plaintiffs alleged was damaged refers to the trees and not the land. Plaintiffs alleged the trees were valued at more than $100,000. They requested damages in excess of $50,000 plus costs.

Miller tendered his defense to his insurer, Pekin Insurance Company (Pekin). Pekin filed a declaratory judgment action, contending certain policy provisions excluded coverage, and it was not obligated to defend or indemnify Miller in the underlying action. The circuit court granted Miller's motion for judgment on the pleadings and denied Pekin's motion for judgment on the pleadings. The court held "Pekin owes a defense on the underlying tort case." The court included language in its order finding there was no just cause to delay enforcement or appeal. 155 Ill. 2d R. 304(a). Pekin appeals.

DECISION

An insurer's duty to defend its insured is determined by the allegations in the underlying complaint. Viking Construction Management, Inc. v. Liberty Mutual Insurance Co., 358 Ill. App. 3d 34, 41, 831 N.E.2d 1 (2005). A duty to defend arises if the complaint's allegations fall within or potentially within the coverage provisions of the policy. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 108, 607

2

1-05-4086

N.E.2d 1204 (1992).  The underlying complaint is to be liberally construed in favor of the insured.  United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991).

We review a judgment on the pleadings on a de novo basis.  State Farm Fire & Casualty Co. v. Tillerson, 334 Ill. App. 3d 404, 407, 777 N.E.2d 986 (2002).  The construction of an insurance policy also is a question of law subject to de novo review. Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 292, 757 N.E.2d 481 (2001).

I. Accident/Occurrence

Pekin contends its CGL policy does not cover the property damage because Miller's actions do not constitute an "occurrence" under the policy.  The policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Property damage is covered only if the damage is caused by an "occurrence."  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Pekin contends Miller's actions were intentional rather than accidental.  Courts define an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character."  Monticello Insurance Co. v. Wil-Freds Construction, Inc., 277 Ill. App. 3d 697, 703, 661 N.E.2d 451 (1996).  "The natural and ordinary consequences of an act do not constitute an accident."  Wil-Freds, 277 Ill. App. 3d at 703.  Pekin contends the

3

natural and ordinary consequences of cutting down trees are damaged trees. Although Miller may not have intended to cut down the wrong trees, Pekin says, Miller's act of cutting down the trees was intentional.

Pekin compares this case to Wil-Freds, where the court held the defective construction of a building resulting in damage to the building itself did not constitute an occurrence under a CGL policy. Wil-Freds, 277 Ill. App. 3d at 704. The court held the construction defects alleged in the complaint for breach of contract were the natural and ordinary consequences of improper construction techniques. Wil-Freds, 277 Ill. App. 3d at 704. In contrast, the plaintiffs in the underlying complaint do not allege Miller used improper techniques in removing trees on their property. Rather, they allege he removed trees on the wrong property.

This case is more similar to Lyons v. State Farm Fire & Casualty Co., 349 Ill. App. 3d 404, 406, 811 N.E.2d 718 (2004), where the underlying complaint alleged the defendant built levees that protruded onto the plaintiffs' property. The insurer argued the act of constructing levees was intentional and therefore was not an "occurrence" or "accident" covered by the insurance policy. Lyons, 349 Ill. App. 3d at 408. The court held the focus of the inquiry in determining whether an occurrence is an accident is "whether the injury is expected or intended by the insured, not whether the acts were performed intentionally." (Emphasis in original.) Lyons, 349 Ill. App. 3d at 409, citing Wilkin, 144 Ill. 2d at 77-78. The court held there was no evidence defendant expected or intended to build the levees so that they extended onto the adjoining property. Lyons, 349 Ill. App. 3d at 412.

4

We reject Pekin's contention that Miller's removal of trees on the underlying plaintiffs' property was intentional and thus not an "occurrence" under the CGL policy. There is no evidence Miller intended the harmful result--the clearing of trees on the wrong property. It is immaterial that the underlying complaint alleges intentional torts. It is the "property damage" that must be " 'neither expected nor intended from the standpoint of the insured.' " Wilkin, 144 Ill. 2d at 77. We find the allegations in the underlying complaint constitute an "occurrence" potentially within the coverage of the insurance policy.

II. Exclusions

Pekin contends two exclusions in the policy preclude coverage. Pekin disputes the defendants' claim that the exclusions are ambiguous and ought to be construed in favor of the insured.

In construing the language of an insurance policy, our primary objective is to ascertain and give effect to the intent of the parties to the contract. Eljer Manufacturing, 197 Ill. 2d at 292. To ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and "take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." Eljer Manufacturing, 197 Ill. 2d at 292.

It is the insurer's burden to affirmatively demonstrate the applicability of an exclusion. Johnson Press of America, Inc. v. Northern Insurance Co. of New York, 339 Ill. App. 3d 864, 871, 791 N.E.2d 1291 (2003). Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer.

1-05-4086

State Farm Mutual Automobile Insurance Co. v. Villicana, 181 Ill. 2d 436, 442, 692 N.E.2d 1196 (1998).

Where a policy provision is clear and unambiguous, its language must be taken in its "plain, ordinary, and popular sense." Wilkin, 144 Ill. 2d at 74. A provision is ambiguous if it is subject to more than one reasonable interpretation. Wilkin, 144 Ill. 2d at 74. Ambiguities will be construed against the insurer. Illinois Farmers Insurance Co. v. Hall, 363 Ill. App. 3d 989, 993, 844 N.E.2d 973 (2006). However, courts will consider only reasonable interpretations and will not strain to find an ambiguity where none exists. Hall, 363 Ill. App. 3d at 993-94.

Section 2j(5) of the Pekin policy excludes coverage for property damage to:

"[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

Section 2j(6) excludes coverage for property damage to:

"[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

"Your work" is defined in the policy as:

"a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or

6

operations."

We examine the words of the two exclusions through a prism formed by a risk analysis of CGL insurance policies.

" '[C]omprehensive general liability policies *** are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses.  [Citations.] Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.' " Eljer Manufacturing, 197 Ill. 2d at 314, quoting Qualls v. Country Mutual Insurance Co., 123 Ill. App. 3d 831, 833-34, 462 N.E.2d 1288 (1984).

See also Wilkin, 144 Ill. 2d at 82 ("business risk" exclusions in liability policies are not intended to provide protection against the insured's own faulty workmanship or product; the policies are meant to afford coverage for damage to other property caused by the insured's work or product); Viking, 358 Ill. App. 3d at 45 (CGL policies generally do not cover claims for breach of contract).

Initially, we separate out those coverage cases that grow out of a contractual relationship between the insured and the injured party who contracted with the insured to do something.  Those cases do not involve personal injury or property damage

1-05-4086

incurred by third parties who are strangers to the contract.

The general holding of the cases is that, for one reason or another, there is no coverage when the insured is in a contractual relationship with the injured party. That is, CGL policies are not intended to cover breaches of contract, no matter how the personal injury or property damage is described by the insured. See Viking, 358 Ill. App. 3d at 45-46; Whitman Corp. v. Commercial Union Insurance Co., 335 Ill. App. 3d 859, 874-75, 782 N.E.2d 297 (2002); Indiana Insurance Co. v. Hydra Corp., 245 Ill. App. 3d 926, 929, 615 N.E.2d 70 (1993). See also West American Insurance Co. v. Kamadulski Excavating & Grading Co., Inc., No. 05-CV-206-DRH, slip op. at 3 (S.D. Ill. May 4, 2006) (court held two exclusions, identical to the exclusions in this case, did not apply to injuries to third parties in the absence of a contractual relationship between the insured and the third parties).

In other cases in which the insured is in a contractual relationship with the underlying plaintiff, courts have construed policy exclusions to preclude coverage for damage to the actual property the insured was working on. But damage to other property owned by the underlying plaintiff has been covered. See Wilkin, 144 Ill. 2d at 81-82; Tillerson, 334 Ill. App. 3d at 410; Pekin Insurance Co. v. Willett, 301 Ill. App. 3d 1034, 1039, 704 N.E.2d 923 (1998); Wil-Freds, 277 Ill. App. 3d at 706-10; Hartford Accident & Indemnity Co. v. Case Foundation Co., 10 Ill. App. 3d 115, 125-26, 294 N.E.2d 7 (1973).

Here, Miller was on the wrong property when he cut the trees. The property and the trees belonged to the underlying plaintiffs, who sued Miller for damaging the trees.

8

There was no contract between Miller and the underlying plaintiffs. The underlying action sounds in tort law and in a violation of a tree-cutting statute.

Pekin's reliance on Pekin Insurance Co. v. L.J. Shaw & Co., 291 Ill. App. 3d 888, 896-97, 684 N.E.2d 853 (1997), where the court held a professional services exclusion did not require privity between the insured and claimant, is misplaced. The holding in L.J. Shaw was confined to a particular professional services exclusion. We confine our analysis to the type of policy and exclusions in this case.

No Illinois state court case squarely confronts the situation we find here. A case that is nearly identical in fact and issue was decided by the Supreme Court of Minnesota. It was a 4 to 3 decision. In Thommes v. Milwaukee Insurance Co., 641 N.W.2d 877 (Minn. 2002), Thommes & Thomas Land Clearing (Thommes) entered into a contract to clear and grub land for a commercial development. Complying with the owner's instructions, Thommes cleared and grubbed one-half acre of land owned by a different owner, who did not consent to the clearing and grubbing. Thommes, 641 N.W.2d at 879. Milwaukee Insurance Company declined to defend or indemnify Thommes, based on exclusions 2j(5) and 2j(6), which contained language identical to the exclusions in this case.

The court distinguished between two types of risks undertaken by an insured contractor. There is a "business risk"--"the risk that the insured 'may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity.' " Thommes, 641 N.W.2d at 881, quoting Bor-Son Building Corp. v. Employers Commercial Union Insurance Co., 323

N.W.2d 58, 63 (Minn. 1982). CGL policies generally do not cover that kind of risk. Thommes, 641 N.W.2d at 881.

CGL policies are intended to insure against the second type of risk--"the risk that [the contractor's] work or product will cause bodily injury or property damage to other property," which may give rise to tort liability to third parties. Thommes, 641 N.W.2d at 881.

The Minnesota court held exclusion 2j(5) was ambiguous because the policy did not define the phrase "that particular part of real property" or the word "operations." Nor did the exclusion expressly apply to operations performed on the property of third parties. Given the underlying purpose of CGL insurance and the principle that insurance exclusions are to be construed strictly against the insurer, the court held the exclusion did not bar coverage for the property damage. Thommes, 641 N.W.2d at 883.

The court held the exclusion in section 2j(6) was ambiguous because it was subject to two reasonable interpretations--either the work was "incorrectly performed" if performed on the wrong property, or the work was "incorrectly performed" only if the manner in which the work was performed was faulty or defective. Thommes, 641 N.W.2d at 883-84. The court construed the exclusion narrowly against the insurer, concluding the exclusion applied only to work performed in a faulty or defective manner and, thus, did not bar coverage. Thommes, 641 N.W.2d at 884.

The dissenting justices maintained the exclusions were clear and unambiguous, their plain meanings excluding coverage. Thommes, 641 N.W.2d at 884-85 (Stringer, J., dissenting). The exclusions were not expressly limited to property performed

pursuant to contract. Thommes was "performing operations" on the property belonging to the third party, and the damage fell within the reference to "property damage" in section 2j(5). Similarly, section 2j(6) clearly excluded coverage because "what could be more incorrect than performing the work on the wrong property?" Thommes, 641 N.W.2d at 885 (Stringer, J., dissenting). The dissenting justices argued the majority's result was absurd. "That Thommes should have liability coverage for damages that he inflicted as a trespasser but not have coverage for claims based on work done on the land specified in the clearing contract defies comprehension." Thommes, 641 N.W.2d at 885 (Stringer, J., dissenting).

We side with the Thommes majority. Both exclusions in this case are ambiguous. In exclusion 2j(5), it is not clear what "particular part of real property" the exclusion is referring to--the land or the trees. Miller was "performing operations" on the trees. Pekin's contention that trees are real property is a reasonable interpretation. The decision Pekin cites for this proposition stands unaltered since 1873. See Osborn v. Rabe, 67 Ill. 108 (1873) (trees are considered real property that may not be seized by a sheriff under a fieri feci (writ of execution)). See also Gialloreto v. State of Illinois, Division of Highways, 30 Ill. Ct. Cl. 233 (1975), citing Illinois Law & Practice, Property § 10 ("Growing trees and shrubs form part of the land and constitute real property"); Swain Nelson & Sons Co. v. Department of Finance, 365 Ill. 401, 6 N.E.2d 632, 633 (1937) ("growing trees and shrubs *** are real property in legal contemplation and the mere removal thereof from the land does not *** convert them into personalty").

In addition, section 2j(5) is ambiguous because it is not clear whether the

11

exclusion refers to <u>any</u> property or only to property that the insured is contractually obligated to perform operations on. Given the purpose of CGL policies, one could reasonably interpret exclusion 2j(5) to apply only to property the insured is contractually obligated to work on. Because there is more than one reasonable interpretation of the provision, we find the provision ambiguous and construe it against the insurer. It does not apply in this case.

Turning to exclusion 2j(6), we agree with the <u>Thommes</u> majority that there are two reasonable interpretations of the provision. The phrase "incorrectly performed" could refer to the manner in which the trees were removed. Here, there was nothing incorrect about the manner in which Miller removed the trees. It also could refer to the location from which they were removed, which would be applicable in this case. It is not clear whether the exclusion applies to the unusual situation in this case because the underlying complaint does not allege Miller's tree-removal procedures were incorrect, only that trees were removed from the wrong lots. We also believe the phrase "your work" as applied to 2j(6) is ambiguous. Nowhere in the exclusion or in the definition of "your work" does the policy indicate whether "your work" is confined to the actual location Miller was hired to perform his tree-cutting work on.

Section 2j(6) does not define the phrase "any property." If it means the land Miller cut trees on it might reasonably be argued the exclusion does not apply because it is not the <u>land</u> that must be "restored, repaired or replaced;" it is the trees. If "any property" refers to the trees that were cut, the exclusion makes no sense in this case because Miller's "work" was not "incorrectly performed" on the trees. We find exclusion

1-05-4086

2j(6) is ambiguous and construe it against the insurer. It does not apply in this case.

Of course, parties to contracts, including insurance contracts, may agree to the scope of coverage and which matters should be excluded from coverage. Village of Lombard v. Intergovernmental Risk Management Agency (IRMA), 288 Ill. App. 3d 1003, 1009, 681 N.E.2d 88 (1997). But their intent to exclude the risk of damage to property owned by third parties must be demonstrated by the use of clear and unambiguous language. University of Illinois v. Continental Casualty Co., 234 Ill. App. 3d 340, 350-51, 599 N.E.2d 1338 (1992). This policy does not do that. If Pekin wanted to exclude coverage for the cutting of trees on a third party's land it could have said so.

CONCLUSION

We affirm the trial court's order finding Pekin is obligated to defend Miller in the underlying lawsuit. Miller's actions alleged in the complaint fit within the policy's definition of an occurrence. The exclusions in sections 2j(5) and 2j(6) are ambiguous and do not clearly exclude coverage for the alleged property damage. We construe them against the insurer.

Affirmed and remanded.

GARCIA, P.J., and SOUTH, J., concur.

13