Quinlan, Regina L., J.
Plaintiff, Northern Sealcoat-ing & Paving, Inc. (“Northern”), brought this action against Defendant, Harleysville Preferred Insurance Company (“Harleysville”), as a result of Harleysville’s denial of a claim and refusal to defend Northern pursuant to an insurance policy issued to Northern by Harleysville. Specifically, Northern brought claims seeking declaratory relief, and for breach of contract, for violation of G.L.c. 93A, and for violation of G.L.c. 176D. The parties have filed cross-motions for summary judgment. For the reasons discussed below, Northern’s Motion for Summary Judgment is DENIED in part and ALLOWED in part and Harleysville’s Motion for Summary Judgment is DENIED.

BACKGROUND

Harleysville issued an insurance policy to Northern, effective from July 1, 2003 to July 1, 2004. Northern paid the premium of $25,327. The contract contained the following relevant provisions:
Section 11(A)(1) states:
We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury,” “property damage,” “personal injury” or “advertising injury” to which this insurance applies
a. This insurance applies only:
(1) To “bodily injury” or “property damage:”
(a) That occurs during the policy period: and
(b) that is caused by an “occurrence.” The “occurrence” must take place in the coverage territory.
Section 11(A)(1)(b) states: “We will have the right and duty to defend any ‘suit’ seeking those damages.”
An “occurrence” is defined as “an accident.” Section 11(F)(9). Section II(F)(12) defines “property damage” as “a. Physical injury to tangible property, including all resulting loss of use of that property; or b. Loss of use of tangible property that is not physically injured.” Section 11(F) (15) defines ‘your work’ as “a. Work or operations performed by you or on your behalf, and b. Materials, parts, or equipment furnished in connection with such work or operations.”
Section 11(B)(1) states: “This insurance does not apply to: . . . k. ‘Property damage’ to: . . . (5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the ‘property damage’ arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because ‘your work’ was incorrectly performed on it.”
On October 2, 2003, Northern removed trees and underbrush from vacant land owned by Joseph Steele, Jr. and Velia C. Pola. Northern, however, cleared the wrong lot. On May 26, 2004, Steele and Pola filed a complaint against Northern alleging that they suffered damages as a result of the unauthorized entry and removal of trees and brush from their property. Specifically, Steele and Pola brought claims for negligent trespass, nuisance, willful trespass, and violation of G.L.c. 93A. Northern sent the complaint to Harleysville and requested that Harleysville handle the claim and provide defense. Harleysville denied coverage of the claim and refused to provide defense, citing Section 11(B)(1)(k)(5) and (6). Northern brought this action seeking a declaratory judgment that Harleysville has a duty to defend and indemnify under the policy.

DISCUSSION

Summary judgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e).
The interpretation of an insurance policy is a question of law for the court. Ruggerio Ambulance Serv. v. National Grange Ins., 430 Mass. 794, 797 (2000) (ci *544 tation omitted). The first issue is whether Harleysville has a duty to defend Northern under the policy. If it is determined that there is no duty to defend, then there is no duty to indemnify because the duty of an insurer to defend a claim is much broader then its duty to indemnify. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10-11 (1989) (citations omitted) (“An insurer must indemnify its insured when a judgment within the policy coverage is rendered against that insured . . . The obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial. Rather, the duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer”); Ruggerio Ambulance Serv., 430 Mass. at 796 (citation omitted); cf. Aetna Cas. & Sur. Co. v. Continental Cos. Co., 413 Mass. 730, 732 n.1 (1992) (“[T]he weight of authority places the duty to defend all counts on an insurer which has a duly to defend at least one count of a complaint, barring a contraxy agreement with the insured”). The question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations in the complaint “are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms,” the insurer must undertake the defense." Ruggerio Ambulance Serv., 430 Mass. at 796 (citations omitted).
The policy’s statement of coverage provides that Harleysville “will pay those sums that the insured [Northern] becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies," and that Harleysville has the “right and duty to defend any ‘suit’ seeking those damages.” The policy’s definition of “property damage” includes “[p]hysical injury to tangible property, including all resulting loss of use of that property.” There is no question that the damage to the trees, timber, wood, and underwood located on Steele’s and Pola’s property constitutes “property damage,” as that term is defined in Northern’s policy.[1] The question, therefore, is whether the damage to Steele’s and Pola’s property is excluded from coverage by section (k)(5) or (6).
“If free from ambiguity, an exclusionary clause, like all other provisions of an insurance contract, must be given its usual and ordinary meaning.” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997) (citation omitted). An ambiguity exists when the language contained is susceptible to more than one meaning. Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 474 (1987) (citations omitted) (noting additionally that words that are unambiguous by themselves might be ambiguous when read in the context of the entire insurance contract). Where there is more than one rational interpretation of the policy’s language, “the insured is entitled to the benefit of the one that is more favorable to it.” Hakim, 424 Mass. at 281 (citations and quotations omitted). “This rule of construction applies with particular force to exclusionary provisions.” Id. at 282 (noting that it is also appropriate for the court to consider what an objectively reasonable insured reading the policy language would expect to be covered); see also Vapui & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431 (1965) (“ ‘Exclusions from coverage are to be strictly construed,’ and any ambiguity in the exclusion ‘must be construed against the insurer’ ”).
The exclusion in section (k)(5) of the policy provides that the insurance does not apply to “ ‘[property damage’ to: . . . [t]hat particular part of real property on which you [Northern] or any contractor or subcontractor working directly or indirectly on your [Northern’s] behalf is performing operations, if the ‘property damage arises out of those operations.’ ” In interpreting the exact same provision in an identical case, the Minnesota Supreme Court stated:
We note that the policy does not define the phrase “that particular part of real property” or the word “operations.” Nor is there any express language indicating that the phrase “that particular part of real property” includes the property of third parties or that the word “operations” is intended to include operations performed on the property of third parties. Given the underlying purpose of... insurance, we conclude that the phrase “that particular part of real property” and the word “operations,” as used in . . . [the] policy, are ambiguous.
Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 883 (Minn. 2002) (plaintiff cleared wrong land of trees, shrubs, and other plants); see also Dorchester Mut. Fire. Ins. Co. v. First Kostas Corp. Inc., Civil No. 97-01054 (Middlesex Super.Ct. Feb. 26, 1998) (Gants, J.) [8 Mass. L. Rptr. 188](“In short, damage to a neighbor’s home caused by . . . [the plaintiffs] careless painting is covered; damage to the claimants’ home is not”); Pekin Ins. Co. v. Miller, 367 Ill.App.3d 263, 270-71 (2006) (agreeing with Thommes decision and applying analysis to identical provisions in case where Miller cleared trees from wrong land). Although this Court recognizes that Minnesota case law is not binding authority, this Court adopts the interpretation in the Thommes case of the exclusion’s language. Because where there is more than one rational interpretation of the policy’s language, the insured is entitled to the benefit of the one that is more favorable to it, this Court holds that exclusion (k)(5) does not operate to bar the damage to Steele’s and Pola’s property from coverage.
The exclusion in section (k) (6) of the policy provides that the insurance does not apply to “ ‘[p]roperty damage’ to . . . [t]hat particular part of any property that must be restored, repaired or replaced because ‘your [Northern’s] work’ was incorrectly performed on it.” The policy’s definition of “your work” includes “[w]ork or operations performed by you [Northern] or *545 on your [Northern’s] behalf.” Again, the Minnesota Supreme Court interpreted an identical provision:
[The plaintiffs] clearing . . . damaged the [third-party’s] property only because it was performed in the wrong place. Granted, the language of [the] exclusion . . . could be reasonably interpreted to refer to damage that results from work performed on the wrong property. Yet the language could also be reasonably interpreted to refer to the manner, rather than the place, in which the clearing ... was performed. The word “incorrect” denotes faulty or defective. Under this second reading, then, [the] exclusion . . . would not apply because there has been no' allegation that [the plaintiffs] work was performed in a faulty or defective manner.
Thommes, 641 N.W.2d at 883-84; see also Pekin Ins. Co., 367 Ill.App.3d at 271 (agreeing with Thommes decision and applying analysis to identical provisions). This Court accepts the Thommes interpretation and finds that exclusion (k)(6) is ambiguous. Construing the exclusion against the insurer, this Court finds that exclusion (k)(6) applies only to work performed in a faulty or defective manner and, thus, does not bar coverage of the damage to Steele’s and Pola’s property.
Therefore, the language found in exclusions (k)(5) and (k) (6) does not clearly and unambiguously demonstrate the parties’ intent to exclude the risk of liability for damage to the real property of third parties. Damage to Steele’s and Pola’s property is damage to which Northern’s insurance applies and Harleysville is obligated to defend and indemnify Northern.[2]

ORDER

For the reasons discussed above, it is hereby ORDERED that Harleysville Preferred Insurance Company’s Motion for Summary Judgment is DENIED and Northern Sealcoating & Paving, Inc.’s Motion for Summary Judgment is ALLOWED as to Count I (declaratory judgment) and ALLOWED as to liability only on Count II (breach of contract) and DENIED as to Count III (violation of G.L.c. 93A), and Count IV (violation of G.L.c. 176D).
Count I: The Court hereby DECLARES that:
Pursuant to Section 11(A)(1) of the policy of insurance issued by Harleysville Preferred Insurance Company to Northern Sealcoating & Paving, Inc., Harleysville Preferred Insurance Company is OBLIGATED to defend and indemnify Northern Sealcoat-ing & Paving, Inc. for any sums that Northern insured becomes legally obligated to pay as damages arising from the occurrence on October 2, 2003 wherein Northern Sealcoating & Paving, Inc. removed trees and underbrush from land owned by Joseph Steele, Jr. and Velia C. Pola.

In addition, the “property damage" here was clearly an “occurrence,” which is defined as an “accident.” See Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 84 (1984) (“This court consistently has stated that the resulting injury which ensues from the volitional act of an insured is still an ‘accident’ within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur”). There is no evidence that Northern intended the harmful result, that is, the clearing of trees on the wrong property.

Because there has been no adjudication in the underlying action, 04-287, summary judgment as to the remainder of Northern’s complaint is denied for both parties.